No. 13173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

GERALD E. ANKENY, JR.,

Plaintiff and Respondent,

-vs-

LAURIE GRUNSTEAD, ROLAND M.
GRUNSTEAD and MILLIE GRUNSTEAD,

Defendants and Appellants.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellants:

Garlington, Lohn and Robinson, Missoula, Montana
Sherman V. Lohn argued, and Gary L. Graham argued,
Missoula, Montana

For Respondent:

Reno and Dolve, Billings, Montana
James A. Reno argued, Billings, Montana
Roger A. Kander, Long Beach, California

Submitted: March 8, 1976

Decided: JUN 2 4 1976

Filed: JUN 2 4 1976

Thomas J. Kearney
Clerk

Hon. A.B. Martin, District Judge, sitting for Chief Justice
James T. Harrison, delivered the Opinion of the Court:

In this action the district court, Yellowstone County,
sitting without a jury, awarded Gerald E. Ankeny, Jr. $83,302
as damages for injuries claimed to have been sustained on June
15, 1970, as a result of an intersection collision between a
motor bike operated by Ankeny and a car owned by Roland M.
Grunstead and Millie Grunstead and driven by their daughter
Laurie Grunstead.  Of the total damages the court awarded $409
for emergency hospital expenses, $5,248 for medical care provided
by the Veterans Administration, and the balance of $77,645 for
general damages.

Grunsteads do not, on this appeal, deny responsibility
for the collision, but claim as a defense that the vehicular
collision was not the cause of the low back injuries for which
the court in large part awarded damages.  Ankeny began experiencing
low back trouble while in the military service in 1965.  From
that time he was plagued with low back pain for which he repeatedly
sought medical relief.  His trouble was finally diagnosed as
spondylolisthesis, a congential low back defect.  As a last resort
he underwent surgery for a spinal fusion, which was performed
February 16, 1969.

Following a postoperative period of about one year, Ankeny
was directed to Doctor Pearlman, a radiologist with the Denver
Veterans Hospital.  According to Ankeny, Doctor Pearlman examined
him, told him to discontinue the use of the back brace and re-
leased him without prescribing further medication or treatment.
Ankeny testified that from March 1970 to June 15, 1970, a period

- 2 -

of about three and one half months, he was free of low back pain. The inference which Ankeny would have drawn from the foregoing circumstances is that a solid fusion had been achieved but that it was displaced by the force of the intersection collision.

To fortify this inference, Ankeny called Doctor Hertwig as a witness. Doctor Hertwig testified that as Ankeny's ward physician he had examined X-ray reports prepared by Doctors Pearlman, Edwards and McCowen. In response to a request for admission by Grunsteads, Ankeny admitted these reports were genuine. Pertinent portions of Doctor Pearlman's report were put in evidence by this testimony:

> "Q. Well do you have a copy of Doctor Pearlman's letter there? A. Yes, the X-rays were taken in February of 1970 at the Denver VA Hospital and I will read the reports as * * * As seen by Doctor Pearlman, 'Mr. Gerald Ankeny had a back fusion * * * in February, 1969. X-rays of his back in February of 1970 to this hospital, show a solid fusion and stable back.' And then he goes on to state * * * 'There is no disability in, and he is able to work, performing any activities that he wishes.', and it is signed by N. Pearlman, M.D."

Dr. Hertwig also testified from a hospital discharge summary dictated by a Dr. Edwards for a hospitalization period running from August 13 through September 21, 1969. Dr. Hertwig summarized this report:

> "A. * * * the report at that time was that Mr. Ankeny complained of no radiation of pain down either leg, and straight leg raising and neurologic examinations were essentially negative. His fusion was stated to be moderately stable, and found this patient to be remarkably normal physically. X-ray of the lumbar area was essentially normal and showed the area of previous fusion."

Dr. Hertwig after being shown an X-ray taken August 18, 1969, was asked:

> "Q. Now with reference to that negative, is there anything there that indicates any findings that would indicate to you that there is not a solid fusion? A. No, there is not * * *."

Dr. Hertwig next made a comparison of two X-rays, one taken in August 1969, before the accident, and one taken in August 1970, about two months after the accident. The doctor's comparison elicited the testimony that the 1970 X-ray showed "some increased subluxation, slipping forward of this vertebra, and I think you can see that distance there, a distance of about one centimeter."

Preliminary to posing a hypothetical question counsel stated, "Now from the facts that you have recited so far, it would appear there was a fusion and that following the fusion something happened which caused the X-rays taken in 1970 to show subluxation * * *." Because the "facts recited" had reference to the reports read by Dr. Hertwig, Grunsteads objected that the facts relied on in the hypothetical question should not be given probative weight. While counsel did not at this time clearly state that he was objecting on the ground of hearsay, subsequent objections to the use of the reports leave no doubt that hearsay was the basis of the objection.

Dr. Hertwig responded to the hypothetical question by concluding that there was "considerable possibility" that the body blow received in the accident would have a "likely * * * effect" on Ankeny's fusion.

At conclusion of Dr. Hertwig's testimony on direct examination, counsel for defendants moved:

> "MR. JONES: Prior to cross examination of the doctor, counsel for the defendants moves to strike any testimony and any opinions rendered by this witness which are predicated upon alleged factual reports by third parties, not present in the courtroom and not subject to cross examination, and moves * * * to strike any testimony based upon his own knowledge, based upon his own expertise."

- 4 -

In contradistinction to Ankeny's medical evidence, Grunsteads called two expert witnesses, Dr. McDonald and Dr. Drouillard, specialists respectively in orthopedic surgery and radiology. Both examined X-rays taken before and after the accident and each testified that essentially the same degree of fusion failure existed before the accident, as after the accident. It was Dr. McDonald's conclusion that the accident did not cause the fusion break down, and that while it "may have aggravated the situation * * * the aggravation was minimal compared to the existing problem."

The crux of Grunsteads' appeal is that unless the X-ray reports of Dr. Pearlman and Edwards are given probative weight there is no substantial evidence to support the conclusion the collision was the cause of the fusion failure, particularly so in the light of the contrary testimony by Grunsteads' medical experts.

We, therefore, turn to the question of what weight and consideration, if any, should be given to the medical reports objected to by Grunsteads.

We find no difficulty in holding the reports are per se hearsay. Ankeny likewise does not question this facet of defendants' objection to the reports. Instead, Ankeny asserts there are other grounds justifying the reception and consideration of the reports by the trial court, notwithstanding their hearsay nature.

One of these grounds is predicated on Grunsteads' request for an admission by Ankeny that the reports in question were genuine. Ankeny in substance claims the request for admission of genuineness is tantamount to Grunsteads introducing the contents of the report into evidence, and having done so, they waive any objection to Ankeny's use of the reports. This claim is hardly worthy of note.

- 5 -

Grunsteads repeatedly pointed out that by asking for an admission of genuineness of the reports they were not conceding that the information contained therein was true.

Ankeny next suggests that Dr. Hertwig's reliance on the reports gave the reports probative value for the purpose of determining the cause of the fusion break. We disagree and hold the probative value of the reports is limited to the use that Dr. Hertwig made of them. In making prognosis or recommending treatment, doctors frequently rely upon medical diagnosis made by others who are experts in a given specialty. Klaus v. Hillberry, 157 Mont. 277, 485 P.2d 54. Dr. Hertwig's testimony clearly shows that his use of the reports was limited to advising Ankeny as to his condition and future care. For this limited purpose the reports were not objectionable on the ground of hearsay. Wallace v. Wallace, 85 Mont. 492, 279 P. 374.

During the course of trial, Ankeny sought to have Dr. Hertwig express opinions relative to the fusion break. The record is barren of any expert opinion by Dr. Hertwig on the critical issue of whether the fusion was solid or broken prior to the accident. The absence of such an opinion is understandable. At one point Dr. Hertwig frankly admitted that he was not qualified to interpret X-rays. When questioned on cross examination relative to the critical issue, he stated he would have to defer to the opinion of a specialist in radiology and orthopedic surgery. In summary, the limiting circumstances of Dr. Hertwig's use of the reports denied Grunsteads any opportunity to test the truth of the reports by cross examination. The reports are therefore clearly hearsay and inadmissible for the purpose of showing that the accident was the cause of the fusion break. Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393; Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57.

- 6 -

With the X-ray reports removed from consideration, the next issue raised is whether there is sufficient evidence to support the trial court's judgment as to the cause of the back defect. We keep in mind the rule that a trial court's findings will not be disturbed on appeal where there is substantial evidence to support them. Olsen v. Sundling, 128 Mont. 596, 281 P.2d 499. In Sands v. Superior Bldg. Co., 136 Mont. 531, 349 P.2d 314, the Court explains substantial evidence:

> "Substantial evidence has been defined by this court as such evidence 'as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiffs' case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence.'"

In this case, the determination of whether the fusion was solid prior to the accident must necessarily be made by medical specialists sufficiently competent to assess the injury. It cannot be left to speculation, conjecture, inference or guess. Graham v. Rolandson, 150 Mont. 270, 435 P.2d 263. As said in Bearman v. Prudential Ins. Co. of America, 186 F.2d 662, 665, (10th Cir.1951), "only a medical expert with training, skill, and experience could form a considered judgment and express an intelligent opinion."

With respect to causation the general rule as to proof required was set forth by Judge Jameson in Wilson v. Northland Greyhound Lines, 166 F.Supp. 667, 675 (D.Mont. 1958):

> "'Plaintiff must prove by legally sufficient evidence that all the injuries for which he claims damages are properly attributable, in a medical sense, to the accident. While plaintiff need not establish such causal connection with certainty, he must do so with reasonable certainty or by a preponderance of the evidence. * * * There can be no recovery for an injury or condition which the evidence shows might have resulted from two or more causes, for only one of which defendant is responsible. So, too, it is not sufficient for one seeking damages for

a condition claimed to have resulted from an accident or injury to show that such accident or injury might or could have caused the condition; other causes should be excluded.'"

With the hearsay reports of Doctors Pearlman and Edwards excluded, and with Dr. Hertwig eliminated as an expert, the only legally sufficient testimony relative to the condition of the fusion before and after the accident is that of Dr. McDonald and Dr. Drouillard which clearly refutes the contention the accident caused the fusion to fail. We therefore hold there is no substantial credible evidence for the trial court's conclusion the accident was the cause of the fusion failure.

Ankeny next proposes that if the evidence is not sufficient to show the fusion failure was caused by the accident, then the evidence is sufficient for the purpose of proving aggravation of the preexisting condition of his back. The case was not presented to the district court on this theory, but there is evidence to support some degree of aggravation.

As we understand Ankeny's reasoning, the general damages awarded by the court was primarily for the pain and anticipated continuing discomfort of the low back injury. He argues it is unimportant whether the pain is from the break of the fusion in the accident, or from the aggravation of a preexisting fusion failure, because in either instance the pain and discomfort will be the same. From this he deduces the damages should be the same. However clever this argument may be, it does not take into account the full scope of Dr. McDonald's uncontradicted testimony. While the doctor's testimony gives medical support to Ankeny's theory of aggravation, the doctor minimizes the aggravation by comparing it with the condition of Ankeny's back prior to the accident. The flaw

in Ankeny's contention is pointed out by the doctor. The pre-existing condition of the back was much more serious injurywise than the aggravation of that condition. We therefore cannot accept Ankeny's proposition the damages would be the same under either theory.

We recognize Ankeny is entitled to some special and general damages, but a proper assessment of these damages would require a new trial. If Ankeny can prove no more than minimal aggravation, any recovery on a new trial might not justify the delay and expense involved. As a means of providing Ankeny an alternative to a new trial, the district court's judgment is modified to award damages in the total amount of $15,000. In fixing damages in this amount, the $409 for special damages allowed by the district court is not included for the reason there is no legally sufficient evidence of such damage. We also exclude all but $500 of the medical bill submitted by the Veterans Administration for the reason that the medical treatment furnished by the Veterans Administration was primarily for physical and mental conditions not shown to be caused by the accident.

If Ankeny should elect not to accept the judgment as modified, the judgment of the district court is reversed and the cause is remanded for a new trial on the issue of damages for aggravation of the injury.

Hon. A.B. Martin, District
Judge, sitting for Chief Justice
James T. Harrison.

- 9 -

We Concur:

_Wesley Castles_

_John Conway Harrison_

_Gene B. Daly_
Justices.

. . . . . . . . . . . . . .

Mr. Justice Frank I. Haswell, concurring in part and dissenting
in part:

I concur in the majority holding that there is no sub-
stantial credible evidence that the accident caused plaintiff's
fusion failure. I also concur with the majority in finding evi-
dence to support some degree of aggravation of a preexisting back
injury.

I cannot agree that we, as an appellate court, can separate
and determine the amount of damages attributable to aggravation
of the preexisting back injury from those attributable to the
fusion failure, reduce the judgment accordingly, and give the
plaintiff the option of accepting the reduced award or securing a
new trial. The trial judge must make this factual determination and
fix the damages accordingly.

I would award a new trial on the amount of such damages.

_Frank I. Haswell_
Justice.

- 10 -