No. 83-32

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

HAROLD GEHNERT,

Plaintiff and Appellant,

-vs-

JOHN CULLINAN, WILLIAM CULLINAN,
PAT CULLINAN and ROBERT CULLINAN,

Defendants and Respondents.

---

LINA BRENNER,

Plaintiff and Appellant,

-vs-

ELOISE CULLINAN and JOHN CULLINAN,

Defendants and Respondents.

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gene Huntley argued, Baker, Montana

For Respondents:

Lucas & Monaghan; Thomas M. Monaghan argued, Miles
City, Montana

Submitted:    June 7, 1984

Decided:    August 9, 1984

Filed: AUG 9 1984

*Ethel M. Harrison*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Seventh Judicial District of the State of Montana, in and for the County of Dawson, involving Harold Gehnert and Lina Brenner. Each of the plaintiffs/appellants sued the defendants, and their lawsuits were combined for trial. Nearly eight years after the incidents which gave rise to the lawsuits, a jury rendered its verdict in favor of the plaintiffs, nine in favor and three against, awarding the plaintiffs their medical expenses in the amount of $614.32 and each was awarded an additional $10,000 in punitive damages. An appeal was taken by the plaintiffs, briefs were filed and this Court ordered a rebriefing by both parties.

An opinion in this case was issued on March 2, 1984. A petition for rehearing was filed by appellant Gehnert and this Court granted a rehearing. The opinion was withdrawn and the case was argued before the Court en banc on June 7, 1984. Having heard the arguments of counsel, we reissue our opinion of March 2, 1984.

Three issues are presented for this Court's consideration:

(1) whether the jury's failure to award damages for pain and suffering and award only special damages, constitutes an inadequate recovery for compensatory damages;

(2) whether an award for punitive damages can properly be considered in determining the adequacy of the compensatory damages award; and

(3) whether the trial court's failure to properly

instruct the jury on the issue of liability is a factor to be considered in determining whether the damages are inadequate.

The plaintiffs were neighbors of the defendants and became involved in a land dispute over leased property that had been leased by B.J. Brenner in 1969. Harold Gehnert is the brother of Lina Brenner, B.J. Brenner's wife. The lease was for five years, terminating on June 23, 1974. At the time the land was leased, according to Brenner, it was unimproved and about ten or twelve acres of the property was susceptible to improvement, so he cleared it, fenced it, leveled it, diked it, ditched it, planted it and irrigated it. In 1974, the last year of his lease, he planted alfalfa and corn on this acreage.

According to B.J. Brenner, his lease provided that if he gave the lessor thirty days notice in writing he would have the right to renew the lease for an additional five years. He testified that in April 1974, he gave notice by letter and followed that notice up with a new lease and a check for another year's rent.

In July of 1974, after the first five year period had terminated, the defendant, John Cullinan, came to Mr. Brenner's home and advised him that he and his brother, William, had leased the property. Plaintiff Brenner advised Cullinan that his own lease was superior to that of the Cullinans because he had an option to renew the original lease which option had been exercised. Thereafter Brenner continued to farm and manage the premises. He harvested one crop of hay and swathed the second cutting. The second crop of hay was baled and removed by the Cullinans. At trial

-3-

they admitted entering the premises, baling the hay and taking it for their own use without notice, explanation or payment to Brenner. In addition they took the third cutting that year.

Corn on the leased property was harvested and in September, cattle belonging to the Brenners and Gehnert were turned onto the property in question to "clean up" following the harvest. It was at this time, early in September, that the defendant John Cullinan, called Gehnert, and told him to move the cows off the leased property or he, Cullinan, would move them. Gehnert told Cullinan that his brother-in-law Brenner had the lease and that he and Brenner were cleaning up some corn on the property. Thereafter he called the sheriff for assistance, and the sheriff came out to monitor this dispute. On September 12th, Gehnert and John and William Cullinan arrived at the property. Disregarding Gehnert's demands that the cattle be left alone, the Cullinans broke down the fences and with the aid of other members of their family drove the cattle through fences onto the highway, scattering them for a half-mile from the pasture where they had been grazing.

Needless to say this caused a certain amount of unfriendliness with the neighbors. After the cattle had been gathered, they were trailed from the Brenner land across the leased land and put in corrals adjacent to the leased land for sorting-out purposes. The following day Gehnert and Midge Brilz, Lina Brenner's pregnant daughter, went to the corrals, mounted two horses and sorted the cattle. Gehnert's and Brenner's cattle were separated, while Lina Brenner watched from her car. They then began to

move the cattle but while they were being moved, six of the Cullinans arrived on the leased land. According to the plaintiffs, the Cullinans spread out through the cattle trying to scatter and disorganize them and then tried to drive the cattle out on to the road again. The plaintiffs tried to keep the cattle from being driven from the pasture by the Cullinans.

Lina Brenner became frightened at this time and drove outside the perimeter of the pasture to the same gate where the Cullinans had parked their car. She was concerned that the Cullinans might harm her pregnant daughter who was working the cattle. According to her story, when she got to where the activity was going on she stopped the car. Eloise Cullinan then entered her car from the passenger side, grabbed her by the hair, pulled her from the car and pinned her on the ground. When Eloise got off of her and Lina tried to stand, John Cullinan shoved her back to the ground. About that time Harold Gehnert started toward Eloise to come to Lina's aid. He was mounted on a horse, and four of the Cullinan men surrounded his horse, slapped and punched him and either knocked him or pulled him from his horse to the ground. According to the testimony, all of this abuse of the plaintiffs took place on that part of the leased land that was fenced, improved and planted by B. J. Brenner.

The plaintiffs argue on appeal that the trial court improperly declined to grant them judgment on the issue of liability when the evidence was closed, and also failed to instruct the jury so that it could, under the law, determine the matter. They allege that they offered appropriate instructions, all of which were refused.

-5-

As previously noted, three issues were presented to this Court for consideration. However, in view of the fact that the first issue is dispositive, we will not discuss the other issues. The evidence clearly indicates that the plaintiffs suffered serious and painful injury. The injury to Harold Gehnert's back is such that it may have been rebroken and there was evidence that he was permanently injured and disabled. Lina Brenner suffered a relapse into a severe depression and while her physical injuries may have been modest, they were accompanied by pain. Her testimony indicated hair had been pulled from her head. The jury found in this case that the Cullinans committed wrongful acts toward the plaintiffs, and their attack on the plaintiffs was the cause of the injuries sustained. Liability having been established, it was the jury's duty to award damages for pain and suffering for the serious injuries suffered. See, Allers v. Willis (Mont. 1982), 643 P.2d 592, 39 St.Rep. 745; Ankeny v. Grunstead (1976), 170 Mont. 128, 551 P.2d 1027; Holenstein v. Andrews (1975), 166 Mont. 60, 530 P.2d 476; and Walker v. Alaska Road Commission (Alaska 1964), 388 P.2d 406.

The judgment is vacated and the case is remanded to the trial court for new trial on the issue of damages only.

John Conway Harrison
Justice

We concur:

Frank R. Haswell
Chief Justice

-6-

_Daniel J. Shea_

_[signature]_

_[signature]_

_John C. Sheehy_

Justices

_John M. McCarvel_

Honorable John M. McCarvel,
District Judge, sitting in
place of Mr. Justice L. C.
Gulbrandson.