No. 91-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

MARGARET E. HANSEN,

      Plaintiff and Appellant,

  -vs-

CURTIS HANSEN and HAUGEN'S, INC.,

      Defendants and Respondents.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Roosevelt,
               The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Loren J. O'Toole II, O'Toole & O'Toole, Plentywood,
          Montana

      For Respondents:

          Donna M. Trotter, Winkjer, McKennett, Stenehjem,
          Murphy & Reierson, Williston, North Dakota

FILED

AUG 6 - 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  February 20, 1992

Decided:  August 6, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff and appellant Margaret E. Hansen brought suit against her son, Curtis Hansen, following a dispute in the operation of the family farm and ranch. Curtis counterclaimed. Margaret appeals from a jury verdict rendered in the Fifteenth Judicial District, Roosevelt County. We affirm.

We phrase the issues before the Court as follows:

1. Was the jury verdict supported by substantial credible evidence?

2. Was it an abuse of discretion for the District Court to admit into evidence respondent's Exhibit P?

3. Should the District Court have granted a default judgment against Haugen's, Inc.?

Appellant Margaret Hansen has lived on the family farm and ranch operation, located near Froid, Montana, since her marriage in 1940. In 1971, appellant's husband died intestate. He was survived by appellant and seven children. Following her husband's death appellant became the sole owner of 1280 acres of land and obtained ownership of all of the ranch equipment of her deceased husband through joint tenancy. Additionally, appellant obtained a one-third interest in both the cattle and another 320 acre parcel of land. The seven children each held a 2/21st interest in the cattle and the 320 acres of land.

Shortly after his father's death, defendant and respondent Curtis Hansen left his employment with Haugen's, Inc., in Williston, North Dakota, and returned, upon appellant's request, to

2

assist on the family farm. Appellant and respondent set up a joint checking account to operate the Hansen Hereford Ranch. Respondent ran the farming and ranching operation for the next 16 years, unilaterally making all decisions which affected the operation. Respondent took on responsibility for all aspects of the operation. In return, respondent received a salary, room and board, a pickup, and gasoline for his personal use.

Respondent made all decisions concerning the purchase of equipment and machinery, and between 1971 and 1987 purchased approximately $200,000 worth of farm equipment. Respondent also signed the ranch property into numerous agricultural programs with the ASCS office in Culbertson, Montana, including enrolling 310 acres in the Conservation Reserve Program (CRP) in July 1987. Respondent consistently signed contracts at the ASCS office and contracts to purchase equipment as "Hansen Hereford Ranch, by Curtis Hansen." However, respondent's last major purchase of equipment was in his own name. Respondent purchased a John Deere 530 baler from Haugen's, Inc., and pledged several pieces of ranch equipment as collateral.

Shortly after this purchase in November 1987, respondent received a letter signed by his mother and all six of his siblings. The letter indicated that the other owners of the ranch operation were somewhat concerned about certain aspects of the operation and indicated that they now intended to take a more active role in the management of the ranch. Specifically, they requested an inventory of all the machinery on the ranch and indicated that in the future

3

a majority of the family members must approve any purchase for the ranch over $1500. Respondent claimed he would be unable to work under these conditions and left the ranch. Respondent returned to Williston, North Dakota, and began working again for Haugen's, Inc.

After leaving the ranch, respondent defaulted on the contract for the equipment purchased in his name. Haugen's, Inc., took a default judgment, moved the judgment to Montana, and repossessed the ranch tractor and loader which respondent had pledged for security. There was a surplus from the sale of the ranch machinery and these funds were deposited into a bank account in the name of Haugen's, Inc., and respondent. Appellant added Haugen's, Inc., as a party for the purpose of getting these proceeds tendered to the court. Haugen's, Inc., never appeared in the action. Appellant moved for a default judgment at trial on this issue, but the motion was never ruled upon by the trial court.

Prior to leaving the ranch, respondent had enrolled approximately 310 acres of land in the CRP and had signed the contract on behalf of the Hansen Hereford Ranch. Of the 310 acres enrolled, appellant owned 152 acres outright, and had a one-third interest in the remaining 158 acres. Shortly after leaving the ranch, respondent notified the local ASCS office that it lacked the signatures of all the owners of the land under the CRP contract. The ASCS office suspended the contract until it could get the signatures of all the family members. Appellant and six of her children signed the contract, but respondent refused to sign. The Roosevelt County ASCS office notified respondent that it required

4

his signature in order to continue the CRP contract. The ASCS canceled the contract when respondent again refused to sign. As a result of the cancellation, the ASCS is seeking liquidated damages from appellant, as well as the return of $16,286.41 in payments previously made under the contract.

The exact number of cattle that the ranch owned at the time of Alfred Hansen's death in 1971 is not entirely clear. However, both parties appear to agree that each of the seven children received approximately ten head of cattle from their father's estate. At some point, respondent bought the cattle owned by three of his brothers, paying each of them $5000. Respondent obtained bank loans to purchase the cattle and then used ranch funds to repay approximately $13,000 on the loans. Appellant sold all of the cattle after respondent left. Respondent was not given any of the proceeds from this sale.

Appellant brought suit alleging respondent converted the farm equipment and seeking damages for the canceled CRP contract. Respondent counterclaimed alleging that appellant had converted his cattle. Additionally, respondent claimed to have been appellant's partner for the 16 years he was on the ranch and he sought damages for lost wages, raises, and fringe benefits he would have received had he stayed at Haugen's, Inc., and not come back to the ranch.

The jury found that respondent had converted appellant's equipment but awarded nothing in damages. The jury then determined that respondent had acted maliciously in relation to the CRP contract and awarded the appellant $1163 in damages. The jury

5

found that appellant had converted cattle belonging to respondent and awarded respondent $20,000. The jury then awarded respondent $23,000 for "other losses." From the verdict of the jury and entry of judgment by the District Court, appellant brought this appeal.

I

Was the jury verdict supported by substantial credible evidence?

Our scope of review of jury verdicts is necessarily very limited. Sizemore v. Montana Power Company (1990), 246 Mont. 37, 803 P.2d 629. This Court will not reverse a jury verdict which is supported by substantial credible evidence. Kitchen Krafters, Inc. v. Eastside Bank of Montana (1990), 242 Mont. 155, 789 P.2d 567. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence may be inherently weak and conflicting, yet it may still be considered substantial. Christensen v. Britton (1989), 240 Mont. 393, 784 P.2d 908. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Mountain West Farm Bureau Mutual Ins. Co. v. Girton (1985), 215 Mont. 408, 697 P.2d 1362. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party. Kukuchka v. Ziemet (1985), 219 Mont. 155, 710 P.2d 1361.

6

## CONVERSION OF EQUIPMENT

Appellant brought suit seeking damages for the conversion of her tractor and loader which respondent had pledged as security when he purchased equipment in his own name. The tractor and loader were lost when respondent defaulted. The undisputed testimony at trial was that the value of the lost equipment was between $18,500 and $23,500. The jury found that respondent converted the equipment, but awarded appellant no damages. Appellant contends the finding by the jury that she was not entitled to any damages was not supported by substantial credible evidence.

The measure of damages for conversion is set out at § 27-1-320, MCA, which states:

> (1) The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> (a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and
>
> (b) a fair compensation for the time and money properly expended in pursuit of the property.
>
> (2) The presumption declared by subsection (1) cannot be repelled in favor of one whose possession was wrongful from the beginning by his subsequent application of the property to the benefit of the owner without such owner's consent.

Respondent correctly argues that the statutory presumption as to the amount of damages is disputable. The presumption of damages in the event of conversion may be overcome by evidence of peculiar

7

circumstances that result in an injury different than the statute contemplates. Graham v. Clarks Fork Nat'l Bank (1981), 193 Mont. 282, 631 P.2d 718. Prior cases decided by this Court have only dealt with situations in which it was alleged that the damages where greater than provided by the statute. However, the presumption may also be overcome with evidence that the damages were less than provided by the statute. This Court has previously suggested that the appropriate practice should be to first instruct the jury on the statutory rule regarding damages. The jury should then receive a supplemental instruction directing that the presumption of damages may be overcome by evidence of peculiar circumstances which would warrant an award of damages different from the statutory presumption. Ferrat v. Adamson et al. (1917), 53 Mont. 172, 163 P. 112. The jury in this case was not specifically instructed as to the evidence necessary to overcome the presumption and made no findings as to any peculiar circumstances which may have existed. However, the jury heard extensive testimony during trial about the nature and duration of the relationship between the parties and determined that appellant was not entitled to damages for the conversion of her equipment. While inherently weak we cannot say that the jury's finding was not based on substantial evidence.

## CRP CONTRACT

Respondent's failure to sign the CRP contract resulted in the contract being canceled by the local ASCS office. The uncontroverted testimony at trial was that the ASCS is now seeking

liquidated damages from appellant as a result of the cancellation, as well as the return of $16,286.41 in payments previously made under the contract. Additionally, appellant has lost future payments which would have been made under the contract.

Respondent argued at trial that since he no longer had control over the completion of the contract, that he could not, in good faith, sign it. Appellant alleged that the refusal to sign was malicious and vindictive. The jury found that respondent acted maliciously in refusing to sign the contract, but awarded only $1163 in damages. Appellant contends this award is not supported by substantial credible evidence.

It is not clear from the verdict how the jury determined appellant's damages to be $1163. However, this Court will not disturb an award of damages unless the amount awarded is so grossly out of proportion to the injury as to shock the conscience. Frisnegger v. Gibson (1979), 183 Mont. 57, 598 P.2d 574. While the award of damages in this instance appears to be relatively small in comparison to appellant's loss, it is not so grossly out of proportion so as to shock the conscience.

## CONVERSION OF CATTLE

Respondent received 2/21sts of the cattle at his father's death, which was approximately ten head of cattle. Respondent then purchased the cattle owned by his three brothers, paying each brother $5,000. He borrowed this money and repaid approximately $13,000 using ranch funds. After respondent left the ranch, appellant sold all of the cattle and kept all of the proceeds.

9

Respondent counterclaimed, alleging that appellant had converted his cattle. The jury found the cattle had been converted and awarded respondent $20,000.

Appellant contends that since the cattle were purchased with ranch proceeds they belonged to the ranch, even if respondent did obtain bills of sale from his brothers for the cattle. Respondent testified at trial that he used ranch proceeds to pay off the loans because he had sold the cattle and deposited the proceeds in the ranch account. Respondent argues in the alternative that the ranch money used to pay off the loans should be considered a gift. While the evidence concerning the conversion of cattle by appellant is clearly conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence and the determination in this case will not be disturbed on appeal by this Court.

### RESPONDENT'S "OTHER LOSSES"

Respondent also counterclaimed, seeking damages for benefits and wages he lost by returning to the ranch in 1971 instead of staying at the job he held at the time. The District Court instructed the jury that if they found respondent was an employee, then the damages respondent sought were barred by the Wrongful Discharge from Employment Act. Respondent argued that he had been a partner on the ranch. The jury apparently agreed. On the special verdict form used by the jury, question 12 asked them to find if appellant owed respondent damages for other losses, and if so, in what amounts. The jury returned with $23,000 in damages, of

10

which $7,000 was for personal checks written by respondent, and $16,000 was for yearly bonuses. While the evidence concerning respondent's claim that he was a partner may appear to be inherently weak and conflicting there was substantial evidence for the jury to reach this conclusion.

## II

Was it an abuse of discretion for the District Court to admit into evidence defendant's Exhibit P?

Defendant's Exhibit P was a report prepared by an expert witness for the defense on the wages and benefits respondent claims he lost by returning to the ranch. The expert referred to the report during his testimony and was subject to cross-examination concerning the report. Respondent did not move for the admission of the report into evidence at the time of the testimony by the expert. Respondent waited until after he had rested his case before he moved for the admission of the report. Over appellant's objection the report was admitted.

Rulings on the admissibility of evidence are within the discretion of the district court and will not be reversed by this Court absent an abuse of discretion. Cooper v. Rosston (1988), 232 Mont. 186, 756 P.2d 1125. This Court has previously held that when a party rests their case they voluntarily lose the right to introduce any further evidence, except rebuttal. Maass v. Patterson (1949), 122 Mont. 394, 204 P.2d 1040. In this instance, the District Court abused its discretion by allowing into evidence defendant's Exhibit P. However, in order for error to be the basis

11

for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party. Rule 61, M.R.Civ.P.; Zeke's Distributing Co. v. Brown-Forman Corp. (1989), 239 Mont. 272, 779 P.2d 908. In this instance, the report was merely cumulative of other evidence presented to the jury and was not prejudicial to appellant. The admission of the report was harmless error, and therefore, does not warrant a reversal.

## III

Should the District Court have granted a default judgment against Haugen's Inc.?

At the conclusion of trial, appellant moved for a default judgment against Haugen's, Inc., concerning the excess proceeds remaining after the repossession and sale of appellant's equipment. The District Court decided that since appellant had only recently received an accounting, and because issues not raised at trial might be involved, a separate proceeding would be needed concerning the excess proceeds. The District Court's decision was clearly within its discretion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

12

_John Conway Harrison_

_Jim Nickerick_

_Paula M. Gray_

_P.C. McDonough_

_Todd McKinley_

Justices