NO.   94-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

BIING SONG LEE and MEI-HSUI LEE,

      Plaintiffs, Respondents,
      and Cross-Appellants,

    v.

JAMES T. KANE and DEIRDRE KANE
a/k/a D. KANE,

      Defendants, Counterclaimants,
      Third-Party Plaintiffs and Appellants,

    v.

BIING SONG LEE and MEI-HSUI LEE,

      Counterclaim Defendants,

    v.

YU-CHI LAI,

      Third-Party Defendant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

          John A. Lence, Attorney at Law,
          Kalispell, Montana

      For Respondents:

          James D. Moore, Morrisons, McCarthy and
          Moore, Kalispell, Montana


                 Submitted on Briefs:  January 19, 1995

                       Decided:  April 11, 1995

Filed:

Justice William E. Hunt, Sr., delivered the opinion of the Court.

James T. Kane appeals from the jury verdict and denial of his post-trial motions in the Eleventh Judicial District court, Flathead County. Biing Song Lee cross-appeals. We affirm in part and remand for determination of damages for Lee's future economic loss, hearing loss, and pain and suffering.

We frame the issues on appeal as follows:

1. Did the District Court err in denying Kane's motion for judgment as a matter of law on the issue of contract damages and lost profits?

2. Was there sufficient evidence to support the jury's award of contract damages?

3. Did the District Court **err by limiting** damages for lost profits to the time period prior to the restaurant's closing?

4. Does substantial evidence support an award of no damages for Lee's pain and suffering and for his hearing loss?

In 1990, Biing-Song Lee and his family decided to move from Vermont to Montana. Before moving, Lee traveled to Whitefish, Montana, to find facilities in which to open a Chinese restaurant. He found a vacant facility previously used as a Chinese restaurant in a building owned by James Kane. Kane owned and operated a bar which was located in the same building as the restaurant facility. Kane and Lee entered into a lease agreement for the restaurant facility. They initially agreed on an annual rent of $18,000. Later Lee agreed to pay an additional $4000 in rent and Kane agreed

2

to pay Lee 15 percent of the total drink sales that Lee made from Kane's bar. Lee paid Kane $5000 of the rent in advance.

According to Lee, Kane agreed to make a variety of repairs before Lee opened the restaurant. These repairs included, but were not limited to, fixing holes in the walls, replacing broken windows, replacing the pilot light in the oven, installing a door, repainting the kitchen, and general cleaning. Lee hoped to open the restaurant by July 1, 1991. In anticipation of this opening date, Lee hired three people from San Francisco as staff and made arrangements for them to be in Whitefish on July 1.

Lee and his family moved to Montana in late June 1991. When they arrived, they discovered that virtually none of the repairs had been made. The facility lacked hot water, and at times lacked any water; the walls and carpet contained holes; and much of the equipment was either missing, broken, or unclean.

Despite the conditions, Lee paid Kane the remaining $17,000 in rent. Lee paid to have some equipment installed or repaired prior to opening the restaurant. Lee testified that he and his family and staff cleaned the facility and opened it for business on July 6, 1991.

Lee testified that throughout the time he operated the restaurant, he had problems with the equipment and the facilities. He also testified that, on numerous occasions, Kane entered the restaurant, including the kitchen area, without notice. According to Kane, he needed to enter the kitchen on various occasions to

check the water gauges, as the water supply for his bar came through the kitchen.

Lee testified that after a few months he discovered that the 15 percent drink sales arrangement was illegal. He discontinued the practice, refunded to Kane the money he had received from the arrangement, and placed a sign in the restaurant stating that restaurant patrons would have to get their drinks directly from the bar. On October 8, 1991, Kane entered the restaurant during business hours and began taking pictures of the sign. Lee's wife, Mei-Hsui Lee, asked Kane not to take photos in front of the customers, and told Kane to leave.

Kane left, but returned to the restaurant with his daughter, Deirdre Kane. Kane and Deirdre entered the kitchen, and an altercation ensued between Kane and Lee. Lee claimed that Kane assaulted and battered him and that Kane also pushed his sister Yu-Chi Lai. Kane claimed that Lee struck him first and that he only struck Lee to protect his daughter. The parties moved from the kitchen into the dining room area of the restaurant. There, Kane struck Lee on the face and/or head at least two times. According to Kane, he struck Lee to protect Deirdre. Kane claimed that Lee also struck him, but this claim was disputed by the testimony of patrons who witnessed the event. Deirdre and Mrs. Lee also struggled and physically interacted while in the dining room. Lee claimed that as a result of the fight, his hearing is now impaired. The Lees closed their restaurant on May 14, 1992.

4

The Lees filed a complaint against Kane on December 31, 1991. They filed an amended complaint on January 7, 1992, adding Kane's daughter as a defendant. On February 25, the Lees filed a second amended complaint that listed 15 causes of action arising from contractual problems and from the altercation on October 8, 1991. On April 13, 1992, Kane and his daughter filed an answer and counterclaim against the Lees, listing eight causes of action, including assault and battery. On the same date, the Kanes also filed a third-party complaint against Lee's sister Yu-Chi Lai for assault and battery.

On July 7, 1992, the Lees filed their answer to Kane's counterclaim and Yu-Chi Lai filed her answer to Kane's third-party complaint. On the same date, Lai filed a counterclaim against Deirdre Kane for assault and battery. Deirdre filed her answer to Lai's counterclaim on July 27, 1992.

The case went to trial before a jury, which rendered its verdict in favor of the Lees on September 25, 1993. The special verdict form that the jury completed found Kane liable for the following acts and awarded the following corresponding amounts:

| | |
|---|---|
| Breach of contract | $ 32,823.00 |
| Breach of the covenant of quiet enjoyment | 1.00 |
| Trespass | 10.00 |
| Assault and/or battery | 604.10 |
| Intentional interference with Lee's business | 1,500.00 |
| Intentional infliction of emotional distress | 370.00 |
| Total | $ 35,308.10 |

5

The jury additionally found that Lee was entitled to punitive damages from Kane. In a separate hearing on October 4, 1993, the jury returned a verdict awarding Lee $19,500 in punitive damages.

On October 13, 1993, the District Court entered judgment and awarded Lee the damages set forth in the jury's verdicts. Kane filed several post-trial motions, including motions for judgment as a matter of law and new trial, which the District Court denied. James Kane appeals and Lee cross-appeals.

## ISSUE 1

Did the District Court err by denying Kane's motion for judgment as a matter of law on the issues of contract damages and lost profits?

At the close of the Lees' case, Kane moved for judgment as a matter of law on the issues of contract damages and lost income. Kane argued that Lee failed to produce sufficient evidence to allow those issues to go to the jury. Kane argues on appeal that the District Court erred by denying the motion.

"[A] directed verdict may be granted only where it appears as a matter of law that . . [the nonmoving party] could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it." Fox Grain and Cattle Co. v. Maxwell (Mont. 1994), 885 P.2d 432, 436, 51 St. Rep. 1136, 1138 (quoting Simchuk v. Angel Island Community Ass'n (1992), 253 Mont. 221, 225, 833 P.2d 158, 160).

6

Kane bases his argument on the statement made by the District Court Judge in chambers that "there is no rational basis upon which the jury can make a determination of future economic loss because of the failure of any expert testimony along those lines . . . ." Kane argues that if Lee failed to introduce sufficient evidence to support future damages, then he also failed to introduce sufficient evidence to support past and present contract damages, including lost profits.

Kane further contends that because there was no expert testimony to establish the amount of lost profits prior to the restaurant closing, that issue should not have gone to the jury. However, Kane correctly concedes in his reply brief "that the use of expert testimony is not essential in proving economic loss . . ." As this Court stated in Fox Grain, 885 P.2d at 436:

> While damages for lost profits may not be speculative, it is only required that they be proven with "the best evidence under the circumstances [which] will support a reasonably close estimate of the loss."

(Quoting Stensvad v. Miners and Merchants Bank (1982), 196 Mont. 193, 206, 640 P.2d 1303, 1310, cert. denied (1982), 459 U.S. 831, 103 S. Ct. 69.) While in some cases expert testimony may constitute "the best evidence under the circumstances," we cannot say that expert testimony is required to prove lost profits in all cases.

The record in this case reveals that Lee introduced sufficient evidence, that when viewed in the light most favorable to Lee, warranted the submission of the issues of contract damages and lost

7

profits to the jury.  We hold that the District Court properly denied Kane's motion for judgment as a matter of law.

ISSUE 2

Was there sufficient evidence to support the jury's award of contract damages?

Kane contends that the jury's verdict awarding contract damages and lost profits is improper for two reasons.  First, Kane contends that Lee failed to provide sufficient evidence, and therefore, the jury engaged in speculation.  Secondly, Kane contends that the award for breach of contract was excessive because Lee failed to **mitigate** his losses.

In Hansen v. Hansen (1992), 254 Mont. 152, 157, 835 P.2d 748, 750-51, we held:

> Our scope of review of jury verdicts is necessarily very limited.  This Court will not reverse a jury verdict which is supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion.  The evidence may be inherently weak and conflicting, yet it may still be considered substantial.  It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence.  Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party.

(Citations omitted.)

In instructing the jury on the issue of contract damages, the District Court used the exact language of § 27-1-311, MCA, which provides:

8

For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

The primary problem with Kane's first argument is that it hinges almost exclusively on the contention that Lee failed to establish lost profits. However, because the jury's lump sum award of $32,823 for breach of contract was not broken into separate components, we are provided with nothing to indicate which, if any, portion of the award constituted lost profits.

Moreover, if the jury did include lost profits in its award, we are convinced that substantial credible evidence exists to support the jury's award. In Stensvad, this Court held:

Damages for loss of profits may be awarded if not speculative. The rule that prohibits speculative profits does not apply to uncertainty as to the amount of such profits but to uncertainty or speculation as to whether the loss of profits is the result, of the wrong and whether such profit would have been derived at all. Once liability is shown, that is the certainty that the damages are caused by the breach, then loss of profits on a reasonable basis for computation and the best evidence available under the circumstances will support a reasonably close estimate of the loss by a District Court. But no damages are recoverable which are not clearly ascertainable both in nature and origin, and only profits which are reasonably certain may be awarded.

Stensvad, 640 P.2d at 1310 (citations omitted).

The District Court in this case instructed the jury:

You may not award speculative damages. The term "speculative damages" refers to mere guesswork as to whether or not the claimed damage is a result of the

Defendants' action, rather than to an uncertainty as to the amount of the damages.

The court further instructed:

Damages are recoverable in this action for loss caused or for profit and other gain prevented by defendant's breach only to the extent that the evidence affords a reasonable basis for estimating their amount in money. Damages which are a matter of mere speculation cannot be the basis of recovery. Recovery cannot be denied for damages simply because they are difficult to determine.

The jury found that Kane breached his contract with Lee. Having determined liability, it was the jury's duty to calculate an award of damages, including lost profits, based on the evidence presented. Lee testified that after Kane failed to clean and make repairs, Lee delayed the opening of the restaurant by five days while he, his wife, and his employees cleaned and made repairs. Lee testified that he and his wife spent very long hours making the restaurant fit for use. Lee testified and produced receipts for over $15,000 of his own expenses, including over $2200 for a new ice machine to replace the one that Kane removed, over $3700 for a stainless steel kitchen hood and exhaust fan, and nearly $2400 for plumbing and heating parts and labor. Lee also testified that, in exchange for 15 percent of the restaurant drink sales from Kane's bar, he agreed to pay an additional $4000 in rent per year. Lee testified that after three months he repaid Kane the amount he had received for drink sales because he believed the arrangement to be illegal.

10

Lee also provided specific information to support an award of lost profits. He introduced all of his actual income receipt records, rent and utility records, costs of goods and variable expense figures, complete tax returns for the three years prior to moving to Montana as well as the two years in Whitefish, and several summaries of the foregoing information. Kane, however, focuses on the Lees' tax returns and argues that they "establish and prove nothing" because "the Lees did not deduct any wages for their own work." Kane asserts that the "true net income" of the restaurant for 1991 actually would have been a net loss if an amount for wages had been subtracted from the $8296.88 of net profit that the Lees reported to the Internal Revenue Service. According to Kane's attorney, the Lees' wages should have been calculated using the following formula:

$4.25 (federal minimum wage)
x 40 hours per week
x the number of weeks the restaurant was open in 1991

Besides simply asserting this argument, Kane's attorney did not introduce any testimony, evidence, or authority to support the theory. Moreover, Kane's attorney failed to introduce any testimony or evidence to contradict the documents introduced by the Lees. It, therefore, was within the province of the jury to determine the weight and credibility to be afforded the evidence that the parties introduced concerning lost profits. Hansen 835 P.2d at 751.

We further reject Kane's assertion that the jury awarded excessive damages because it failed to consider Lee's efforts to mitigate his damages. According to Kane, the Lees failed to take reasonable steps to mitigate their economic losses.

The District Court instructed the jury:

> The Plaintiffs have a duty to minimize their damages. However, that duty does not require them to do what is unreasonable or impracticable.

The record shows that defense counsel fully cross-examined Lee regarding his efforts to mitigate his losses. It was, therefore, within the jury's province to weigh Lee's testimony and determine whether he reasonably mitigated his damages. Hansen, 835 P.2d at 751

We hold that substantial credible evidence supports the jury's award of contract damages.

### ISSUE 3

Did the District Court err by limiting damages for lost profits to the time period prior to the restaurant's closing?

On cross-appeal, Lee contends that the District Court erred by giving Jury Instruction No. 29 which provides:

> If you find that Defendant breached his contract with Plaintiff, committed fraud or deceit against Plaintiff, or committed an intentional interference with business, your award of damages should include lost profit up to May 14, 1992 or other prospective gain from the operation of Plaintiff's business. Damages for lost profits or other gains are recoverable only to the extent that the evidence affords a reasonable basis for their determination. However, recovery cannot be denied simply because the damages are difficult to determine.

With regard to jury instructions, this Court has held:

12

It is within the discretion of the District Court to decide how to instruct the jury, taking into account theories of the parties, and we will not overturn the court's decision unless the District Court abused its discretion. If jury instructions when taken as a whole properly state the applicable law, there is no abuse of discretion on the part of the District Court.

Chambers v. Pierson (Mont. 1994), 880 P.2d 1350, 1354-55, 51 St. Rep. 921, 924 (citations omitted). We determine that the District Court in this case abused its discretion by instructing the jury that lost profits could be awarded only up to May 14, 1992.

The record shows that after the close of the Lees' case, counsel met with the Judge in chambers. Defense counsel moved for judgment as a matter of law on the issue of contract damages on the grounds that the Lees failed to meet their burden of proof. The District Court denied the motion as to past and present contract damages, but ruled that it would foreclose future damages by providing a limiting instruction. The District Court Judge stated:

I guess I agree with the defense here that there is no rational basis upon which the jury can make a determination of future economic loss because of the failure of any expert testimony along those lines . . .

As we stated under Issue 1, this Court does not require expert testimony to prove lost profits; we only require that lost profits be proven with "the best evidence under the circumstances [which] will support a reasonably close estimate of the loss." Fox Grain, 885 P.2d at 436; Stensvad, 640 P.2d at 1310. We, therefore, hold that the District Court abused its discretion by limiting lost profits to the period prior to the restaurant's closing.

13

ISSUE  4

Does substantial evidence support an award of no damages for Lee's pain and suffering and for his hearing loss?

Lee contends that the jury's award of damages resulting from Kane's assault is insufficient because it awarded the amount of his medical costs but did not award for his pain and suffering or for his hearing loss.  Kane, on the other hand, argues that the jury simply chose to believe his expert witness who testified that he had never seen hearing loss following a boxing match.

Lee cites Gehnert v. Cullinan (1984), 211 Mont. 435, 685 P.2d 352, in support of his position.  In Gehnert, the plaintiff was assaulted by the defendants.  The jury awarded the plaintiff his medical expenses only.  This Court reversed and remanded for a new trial on damages, stating that "[l]iability having been established, it was the jury's duty to award damages for pain and suffering for the serious injuries suffered." Gehnert, 685 P.2d at 354 (citing Allers v. Willis (1982), 197 Mont. 499, 643 P.2d 592; Ankeny v. Grunstead (1976), 170 Mont. 128, 551 P.2d 1027; Holenstein v. Andrews (1975), 166 Mont. 60, 530 P.2d 476; Walker v. Alaska Road Commission (Alaska 1964), 388 P.2d 406).

As we stated above, this court will not disturb a jury verdict if there is substantial credible evidence in the record to support the verdict.  Hansen, 835 P.2d at 751.  In this situation, where Lee appeals from what he considers an insufficient award, our

14

inquiry is whether there is substantial evidence to **justify** the award of no damages for pain and suffering and hearing loss.

The parties introduced conflicting evidence as to whether the assault caused Lee's hearing loss. Lee testified at trial that he had no problem with his hearing before Kane assaulted him. Lee's treating physician, a doctor with 20 years experience as an ear, nose and throat specialist, testified that Lee was administered an audiometric test. The test revealed that Lee suffered a conductive deafness in his left ear. The doctor stated that the deafness was most likely caused by an ossicular discontinuity or fracture--a separation of the tiny bones in the inner ear--and that such a discontinuity or fracture could very well have been caused by a blow to the head. Although some of the symptoms that Lee reported, such as the ringing in his ears, could not be objectively verified, the doctor stated that the symptoms that Lee reported were consistent with a conductive hearing loss caused by a blow to the head.

Kane's expert, who treated boxers following boxing matches, testified that he had never observed hearing loss as a result of a blow to the head. However, he stated that he would assume that if the problem did not exist prior to the blow, and did exist after the blow, the blow probably caused the hearing loss. Kane offered only minimal testimony that indicated Lee suffered hearing problems prior to the assault, and that testimony consisted of one of Kane's

15

employees stating that on the few occasions that he had talked to Lee, Lee would cock his head to one side.

Kane admitted that he struck Lee on the head. The jury found Kane liable for the assault against Lee. The jury awarded Lee damages of $604.10, an amount equal to Lee's medical expenses. Pursuant to Gehnert, it was the jury's duty to award Lee damages for pain and suffering for his serious injuries. Viewing the evidence in a light most favorable to Kane, we hold that there is not substantial evidence to support the jury's failure to award damages for pain and suffering or for the hearing loss. On retrial, the jury should determine an appropriate amount of damages for Lee's pain and suffering and hearing loss attendant to the assault.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16

April 11, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John A. Lence
Attorney at Law
69 North Main Street
Kalispell. MT 59901

James D. Moore, Esq.
Moore & Doran
P.O. Box 1198
Kalispell, MT 59901

Richard P. DeJana
Attorney at Law
P.O. Box 1757
Kalispell, MT 59903-1757

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy