No. 96-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

JACKIE A. McGREGOR,

Plaintiff and Appellant,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, a/k/a AMTRAK,

Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Robert P. Goff, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chas. C. Dearden, Attorney at Law, Whitefish, Montana

For Respondent:

Robert E. Sheridan; Garlington, Lohn & Robinson,
Missoula, Montana

Submitted on Briefs: July 31, 1997

Decided: August 12, 1997
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Jackie McGregor, a ticket agent for Amtrak, filed this suit pursuant to the Federal Employer's Liability Act, 45 U.S.C.A. 51 et seq., seeking damages for injuries she received while unloading baggage. She appeals from a special jury verdict finding no negligence on the part of Amtrak. We affirm.

## Issues Presented

1. Whether the verdict of no negligence is supported by the evidence.
2. Whether the court erred in excluding evidence comparing the baggage volume in Whitefish with the volume in Spokane and Seattle.
3. Whether the court erred in allowing Amtrak's counsel to question McGregor about a separate ADA claim that was pending against Amtrak.

## Discussion

McGregor began working as a ticket agent for Amtrak in 1983 and continued working as a lead ticket agent until her injury. As a ticket agent, her duties included the handling of baggage and express items weighing up to 75 lbs. per item. On January 4, 1994, McGregor was unloading baggage from the train to the baggage cart. The baggage was stacked in the doorway of the train car. She was in the process of taking bags down from the car and placing them on the cart when she took a "quite heavy" bag (estimated to be 65-70 lbs.) and placed it on the cart and injured her arm in the process.

1. Whether the verdict of no negligence is supported by the evidence.

Our review of the sufficiency of the evidence to support a jury verdict is limited. Our standard of review in a jury case is set forth in Lee v. Kane (1995), 270 Mont. 505, 510-11, 893 P.2d 854, 857 (quoting Hansen v. Hansen (1992), 254 Mont. 152, 157, 835 P.2d 748, 750-51) as follows:

"Our scope of review of jury verdicts is necessarily very limited. This Court will not reverse a jury verdict which is supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence may be inherently weak and conflicting, yet it may still be considered substantial. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party."

McGregor's theory was that Amtrak was negligent in failing to adopt and implement rules and procedures for the safe performance of her work. Specifically, she argued that the weight limit and process used were unsafe; that despite awareness that its 75 lbs. per bag limit had caused injury to its employees, Amtrak continued to accept baggage up to 75 lbs. McGregor presented testimony from a number of Amtrak employees who testified that they had expressed concerns to their supervisors that the 75 lb. weight limit was too heavy. McGregor also relied on an interoffice memorandum

issued on September 20, 1994, after her injury, which stated, in part,
Effective with the October 30, 1994 timetable change, we have reduced the
maximum weight of checked baggage to 50 lbs. per item.  Passengers may
check a heavier suitcase or carton, not to exceed 75 lbs., upon payment of
a $10.00 surcharge.  The intent is to provide a financial incentive for
passengers to keep their baggage light while still accommodating the
occasional passenger who unavoidably has a heavier piece that does not
exceed the existing Amtrak Express regular weight limit.

Amtrak Express maximum weights (regular express, 75 lbs.) are not being
changed as it would make us uncompetitive with other shipping services.
Most have a weight limit of 70-75 lbs. per piece.

McGregor contends that Amtrak "essentially admitted that it [the weight limit] was
unsafe when it took steps to reduce the hazard by limiting checked baggage to 50 pounds,
thereby reducing the volume of items over 50 pounds."  On appeal, she argues that the
above facts prove more than "slight negligence," which is all that is required in a FELA
action, Rogers v. Missouri Pacific R. Co. (1957), 352 U.S. 500, 506, 77 S.Ct. 443, 1
L.Ed.2d 493; and that the verdict of no negligence is not supported by the evidence and
must be reversed.

Amtrak asserts that the verdict is supported by the following substantial evidence:

The District Court admitted safety rules entitled "Amtrak Onboard and Station
Services Safety Rules." These rules provided specific direction to Amtrak employees on
when to seek assistance in lifting objects that were unwieldy and/or heavy and how to use
proper body mechanics when lifting the object.  The rules provide that employees should
avoid twisting or rotating the torso while lifting.  In addition, Amtrak presented testimony
that it provided video and training aids for station employees regarding the proper
techniques for lifting.

As to the testimony presented by McGregor that other employees had expressed
concerns regarding the 75 lb. limit, Amtrak countered this testimony with evidence that
the 75 lb. limit is universally accepted in the transportation industry, including airline,
bus and railroad.  Amtrak's Medical Director, Dr. McLean, testified that historically the
entire railroad industry has had a weight limitation of 75 lbs. per bag.

As to McGregor's contention that the September 20, 1994 memorandum is an
admission by Amtrak that its weight limit of 75 lbs. was negligent, Amtrak points out
that, even under the new policy of charging for bags over 50 lbs., it continued to accept
bags weighing up to 75 lbs.  Amtrak presented testimony that the main purpose of the
change in billing policy was to generate revenue.  The memorandum exhibit offered by
McGregor clearly states that the maximum weight remained the same.

Amtrak Express maximum weights (regular express, 75 lbs.) are not being changed as it would make us uncompetitive with other shipping services. Most have a weight limit of 70-75 lbs. per piece.

We conclude that, although there may have been conflicting evidence on the question of negligence, there was, nonetheless, substantial evidence which a reasonable mind might accept as adequate to support a conclusion of no negligence on the part of Amtrak. Lee, 893 P.2d at 857. We affirm the District Court's denial of McGregor's motion for a new trial wherein she contended that there was insufficient evidence to support the verdict.

2. Whether the court erred in excluding evidence comparing the baggage volume in Whitefish with the volume in Spokane and Seattle.

A trial court's ruling on the admissibility of evidence will not be disturbed unless it was an abuse of discretion. Burlingham v. Mintz (1995), 270 Mont. 277, 279, 891 P.2d 527, 529. In order for an abuse of discretion as to an evidentiary ruling to be the basis for a new trial, the court's error must be so significant that it materially affects the substantial rights of the appellant. Peschke v. Carroll College (Mont. 1996), 929 P.2d 874, 881, 53 St.Rep. 1428, 1433.

It was McGregor's contention that Amtrak failed to provide sufficient help at the Whitefish station. McGregor's evidence showed that Whitefish was staffed with five employees who had to cover two trains per day with a minimum of two employees working each train. In the period leading up to her injury, McGregor had worked nine out of ten days. McGregor sought to prove her theory of understaffing by introducing evidence that Whitefish handled more baggage than either Spokane or Seattle. Amtrak objected to this evidence on the basis that Spokane and Seattle were "heavy stations" and handled more trains per day than did Whitefish and thus there was no valid comparison.

The court sustained the objection and excluded the evidence.

The jury was instructed that liability could attach if Amtrak failed "to provide sufficient manpower to complete the work in a reasonably safe manner." McGregor contends that the court's excluding of the evidence comparing Whitefish with Spokane and Seattle precluded her from showing that her injury was due to understaffing.

Amtrak contended that since Spokane and Seattle handle more trains than Whitefish, and since they, unlike Whitefish, handle palletized units, there was no valid comparison to be made between the baggage volume figures. In a pretrial discovery deposition, Amtrak's Product Line Manager, Gary Erford, testified that baggage counts at Whitefish could not be compared with those at Spokane and Seattle since those two cities were classified as heavy stations handling palletized shipments. A large palletized shipment would be shown on the baggage reports as one unit, just as a single ski bag at Whitefish would be shown as one unit.

Furthermore, McGregor, on cross-examination, testified that there was a

sufficient crew to perform the baggage handling function on the day she was injured.

Q    And it would be fair to say, would it not, that based upon the amount of baggage that was on board that train, and what was going to be put on the train, in other words, both loading and unloading, that four people was an adequate crew to handle this baggage that day?

A    Yes.

Q    You're not saying that there was not a sufficient crew there to help you unload the bags that day, are you?

A    No, I'm not.

Given the differences between the Spokane and Seattle baggage statistics as compared to those of Whitefish and McGregor's concession that the staffing was sufficient on the day in question, we hold that the District Court did not abuse its discretion in excluding the evidence of the baggage volume figures from Spokane and Seattle.

3.    Whether the court erred in allowing Amtrak's counsel to question McGregor about a separate ADA claim that was pending against Amtrak.

In response to a question on direct examination about her attempts to return to work, McGregor testified that: "After 30 years I just felt that they could do something to accommodate me."  Then, on cross-examination, over counsel's objection as to relevancy, she was asked whether she had a lawsuit pending against Amtrak in U.S. District Court concerning her "accommodation."  McGregor replied that her counsel had filed such a lawsuit.  The court denied McGregor's motion for a mistrial and, at the close of the evidence, the court gave a curative instruction that, "You have heard testimony the Plaintiff has another lawsuit against Amtrak involving other issues.  You are instructed not to consider the existence of that lawsuit in any way in your deliberations."  McGregor moved for a new trial arguing:

I am concerned that the jury, now being aware of the fact of the pendency of the other case, may somehow feel or determine it appropriate to reduce the award here figuring that the rest is going to be picked up there.
    . . . .
But there's no way we can exclude the possibility that they may deem it appropriate to reduce the award here.

The court denied the motion.

McGregor objected to the cross-examination about her pending claim in Federal Court on the basis that such testimony was irrelevant and would adversely affect the jury's computation of damages.  Since the jury found no negligence by Amtrak, it did not reach the issue of damages.  Thus, the error, if any, was harmless and did not affect a substantial right of McGregor's.  See Peschke, 929 P.2d at 881.

                    Affirmed.

                        /S/  W. WILLIAM LEAPHART
              We concur:
          /S/  JAMES C. NELSON
            /S/  JIM REGNIER
        /S/  TERRY N. TRIEWEILER
          /S/  KARLA M. GRAY