No. 92-141

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

LINDA HOGAN, as Personal Representative of the Estate
of Ralph Hogan, Jonathan Hogan and David Hogan,

Plaintiffs and Appellants,

-vs-

FLATHEAD HEALTH CENTER, INC., a Montana corporation,
d/b/a Kaslispell Regional Hospital,

Defendant and Respondent.

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gene R. Jarussi, Jarussi & Bishop, Billings, Montana

For Respondent:

Stephen C. Berg, Warden, Christiansen, Johnson &
Berg, Kalispell, Montana

FILED

NOV 24 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  October 8, 1992

Decided:  November 24, 1992

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury sitting in the District Court for the Eleventh Judicial District, Flathead County, found for defendant and respondent on this claim for damages arising from the death of Ralph Hogan. We affirm.

The issue is whether the jury's verdict is supported by substantial credible evidence.

During the evening of June 9, 1987, Ralph Hogan, a thirty-nine-year-old father of four, was playing an informal game of basketball with other men and boys in a gymnasium at the Church of Jesus Christ of Latter-Day Saints in Kalispell, Montana. During the game, Hogan suddenly fell to the floor. Suspecting a heart attack, two men began performing CPR on him. One of the other basketball players telephoned Kalispell Regional Hospital and asked that an ambulance be dispatched to the gym.

Hogan was treated by the ambulance crew at the gym and then transported to Kalispell Regional Hospital, where, unfortunately, he was pronounced dead shortly thereafter. His widow and two of his sons claim the hospital was negligent in failing to timely dispatch an ambulance. Their theory is that a hospital employee delayed between receiving the call from the gym and relaying the message to the Kalispell Fire Department, where the ambulance was located.

The case was tried to a jury in a four-day trial. Men and boys who were at the gym testified about the events of the evening and gave estimates that the ambulance arrived about 20 minutes after Hogan collapsed. The basketball players acknowledged that they believed the ambulance would be sent from the hospital, which was located across a field from the gym. They did not realize the hospital did not operate its own ambulances and an ambulance had to be sent from the fire department in downtown Kalispell. All of the ballplayers agreed that during times of stress, events can seem to take much longer than they actually do.

Sally Berosick, the hospital employee who received the phone call from the gym, testified that she immediately relayed the request for the ambulance to the fire department after receiving the call from the gym. Other hospital employees and ambulance personnel testified about their actions in response to the situation. Additionally, both parties presented medical testimony concerning Hogan's physical condition at the time of his death, including ventricular fibrillation, or irregular heartbeat, which was the cause of his collapse.

The jury answered "no" to a special interrogatory asking whether Kalispell Regional Hospital was negligent in failing to transmit the ambulance request in a timely manner. From that finding, the Hogans appeal.

Our standard of review of a jury's findings of fact is whether the record contains substantial evidence to support those findings. Silvis through Silvis v. Hobbs (1992), 251 Mont. 407, 411, 824 P.2d 1013, 1015. When determining whether substantial evidence exists to support a jury verdict, this Court reviews the evidence in a light most favorable to the prevailing party, and if conflicting evidence was presented, the credibility and weight given to the evidence is within the province of the jury. Silvis, 824 P.2d at 1015-16.

The Hogans argue that under the circumstances of this case Berosick's testimony that she immediately relayed the request for the ambulance to the Kalispell Fire Department does not constitute substantial evidence upon which a jury could render a verdict in favor of the hospital. They assert that Berosick's testimony is highly improbable and conflicts with undisputed physical facts.

The claimed improbability and conflicts deal with the timing of events immediately following Hogan's collapse. Three ballplayers at the gym, including one of Hogan's sons, ran to the hospital while the ambulance was being dispatched. A hospital employee testified that after the ballplayers arrived at the hospital he heard on the hospital scanner radio that the ambulance was en route to the gym. The Hogans assert that unless Berosick delayed in calling the ambulance, the ballplayers would not have had time to get to the hospital before the ambulance began its journey.

4

The ballplayers testified that the run to the hospital took about one minute. The Hogans contend that this is an undisputed physical fact, and that because Berosick's testimony conflicts with it, her testimony cannot be considered substantial.

The Hogans cite Nelson v. Flathead Valley Transit (1992), 251 Mont. 269, 824 P.2d 263. In Nelson, the plaintiff claimed that the physical tracks of a snowplow following the shoulder of a road controlled over testimony of the driver of defendant's vehicle that the snowplow was in the middle of the road. This Court held that, because the only evidence concerning the tracks of the snowplow was the testimony of the snowplow driver, the physical facts were unclear and did not control over the testimony of the driver of the other vehicle. Nelson, 824 P.2d at 266. Similarly, in this case, the only evidence concerning the amount of time necessary to run from the gym to the hospital is the estimate given by the ballplayers. Their testimony would not control over conflicting testimony. More importantly, the amount of time it took to run from the gym to the hospital does not resolve the essential issues of this case.

The hospital provides in its brief, as it did at trial, a chronology of events constructed from the testimony of the various witnesses. The ballplayer who called the hospital testified that he went down the hall from the gym to the phone, dialed directory assistance, let it ring several times, found a phone book, looked up the number for the hospital, and then redialed. When he got

5

through to Berosick, he gave her a brief description of the situation and the location, which she then had him reconfirm. The hospital posits that the phone call from the gym to the hospital was completed a minute and a half after Hogan's collapse, Berosick's call to the fire department took about thirty seconds, and approximately a minute thereafter the ambulance was on its way. The amount of time the ambulance was on the road, four minutes, was memorialized on a time clock. This chronology totals seven minutes. It is supported by the record made by an ambulance worker, who, after talking with those present at the gym, estimated the time of Hogan's collapse at 10:31 p.m., or seven minutes before the ambulance arrived at the gym.

The chronology provided by the hospital would allow the jury to give credence to both Berosick's testimony about her actions and the testimony of the ballplayers about their actions. One ballplayer who ran to the hospital testified that he left while the caller was looking through the phone book. If there was a delay of three minutes between Hogan's collapse and the ambulance's departure from the fire station, the ballplayers could easily have reached the hospital on foot before the announcement on the scanner that the ambulance was on its way.

One of the ballplayers testified that he made two round trips between the gym and the hospital before the ambulance arrived at the gym. If, as the hospital theorizes, it took about seven

6

minutes after Hogan's collapse for the ambulance to reach the gym, both the testimony of the ballplayer and the testimony of Berosick could be accepted.

The Hogans point out a conflict between Berosick's testimony that all three ballplayers arrived at the hospital at the same time and the ballplayers' testimony that they arrived separately. However, the evidence established that Berosick had her back to the emergency room lobby while she was taking care of the switchboard. The jury was instructed that "[y]ou alone are to determine whether to believe any witnesses and the extent to which any witness should be believed." Even if they believed Berosick was inaccurate in stating that all three ballplayers arrived at the hospital at the same time, the jurors could have found other parts of her testimony credible.

Berosick testified that, as the ballplayers entered the hospital, she heard on the scanner that the ambulance had arrived at the gym. The Hogans claim this is impossible, given the testimony of the other hospital employee that he heard on the scanner that the ambulance was on its way to the gym when the ballplayers were at the hospital. Again, even if the jury disbelieved the portion of Berosick's testimony that the message on the scanner was that the ambulance "had arrived," rather than "was on its way to" the gym, it could still find credible her testimony

7

that she relayed the call to the ambulance as soon as she received it.

No motive has been suggested for Berosick to delay in calling the ambulance. The hospital has provided, as it did at trial, a chronological framework supporting a finding that there was no negligence in transmitting the ambulance request in a timely manner. We conclude that Berosick's testimony, along with the other evidence submitted, provides substantial credible evidence upon which the jury could base a verdict for the hospital.

Affirmed.

Chief Justice

We concur:

Justices

8

November 24, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gene R. Jarussi
Jarussi & Bishop
P. O. Box 3353
Billings, MT  59103-3353

Stephen C. Berg
Warden, Christiansen, Johnson & Berg
P. O. Box 3038
Kalispell, MT  59903-3038

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy