NO.    95-327

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

EMMA L. PESCHKE and WILLIAM PESCHKE,
individually and on behalf of
BYLLI PESCHKE and ALICE PESCHKE,
minors; and HOPE PESCHKE,

      Plaintiffs and Appellants,

  v.

CARROLL COLLEGE,

      Defendant and Respondent

FILED

DEC 23 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          James D. Walen; Stacey & Walen;
          Billings, Montana

          Norman H. Grosfield; Utick & Grosfield;
          Helena, Montana

      For Respondent:

          Thomas Q. Johnson; Keller, Reynolds, Drake,
          Johnson & Gillespie; Helena, Montana

                      Submitted on Briefs:    November 7, 1996

                            Decided: December 23, 1996

Filed:

_____
               Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Plaintiffs appeal from the judgment entered by the First Judicial District Court, Lewis and Clark County, which ordered that plaintiffs take nothing by reason of their complaint against Carroll College for negligence surrounding a shooting incident which occurred on the Carroll campus. We affirm.

The issues on appeal are as follows:

1. Was there substantial evidence to support the jury verdict?

2. Did the District Court properly instruct the jury?

3. Did the District Court err by allowing the jury to view a video-taped reenactment of the events which occurred prior to the shooting incident?

FACTS

The fact are not in dispute. In May 1990, summer school was in session at Carroll College. Emma Peschke was working in the school cafeteria located on campus in the Carroll Commons. She was a food service employee for the Marriott Corporation which had the food service contract at Carroll.

At approximately 3:00 p.m. on May 18, 1990, Father Humphrey J. Courtney had taken his mother to the chapel located in Borromeo Hall where he was conducting Mass. When Father Courtney got to the front door of the chapel he encountered John Aills and a woman companion, Marie Terese. He told Aills and Terese that they would have to keep quiet if they were going to stay in the chapel. Aills and Terese followed Father Courtney into the chapel. Father

Courtney left the chapel to find a chair for his mother and then went back to the sacristy to prepare for Mass. When Father Courtney came out of the sacristy and before he started Mass, he observed that Aills had a hand gun that was stuck in the front of his trousers.

Father Courtney started the Mass and Aills began to make noises and disrupt things by hollering and banging on a pew. Father Courtney testified that Aills' demeanor was boisterous and loud, and that Aills was making grunting or hooting noises. He decided to ask Aills to leave the chapel and walked up to the pew area where he could talk to Aills face to face. He was able to smell alcohol on Aills' breath and felt that Aills was probably drunk. Father Courtney approached Aills, took him by the arm and escorted him out into the hallway of the dormitory building. Father Courtney then went back to the chapel and was unaware of Aills' subsequent actions. Aills left the chapel, entered the college cafeteria, and shot Peschke and one other Marriott employee. Peschke was shot in the chest and hospitalized, and the other employee died from her injuries.

On December 3, 1992, Peschke and her family, consisting of husband William and daughters Bylli, Alice, Teresa, and Hope, filed a complaint for negligence and a demand for jury trial against Carroll seeking compensatory and special damages. The complaint alleged that Carroll, through its agents and employees, specifically Father Courtney and others who observed Aills prior to the shooting, was negligent by failing to warn others or call

3

campus security or local police to have Aills arrested, disarmed, or removed from campus. Teresa's claim for loss of consortium was dismissed prior to trial since she was over the age of eighteen.

A jury trial was conducted between April 17 and 25, 1995. The jury returned a special verdict finding that Carroll was not negligent. On April 28, 1995, the District Court entered judgment. Peschke filed a motion for a new trial, which the court denied on June 13, 1995. This appeal followed

ISSUE 1

Was there substantial evidence to support the jury verdict?

In Lee v. Kane (1995), 270 Mont. 505, 893 P.2d 854, this Court discussed our standard of review of a jury verdict in a civil case:

> Our scope of review of jury verdicts is necessarily very limited. This Court will not reverse a jury verdict which is supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence may be inherently weak and conflicting, yet it may still be considered substantial. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party.

Kane, 893 P.2d at 857 (quoting Hansen v. Hansen (1992), 254 Mont. 152, 157, 835 P.2d 748, 750-51).

The tort of negligence has four elements: (1) existence of a duty; (2) breach of that duty; (3) causation; and (4) damages. U.S. Fidelity and Guar. Co. v. Camp (1992), 253 Mont. 64, 68, 831

4

P.2d 586, 588-89.  A plaintiff must establish all of these elements to succeed on an action in negligence.  <u>Camp</u>, 831 P.2d at 589.

In the present case, a special verdict form was provided to the jury.  The relevant questions on the special verdict were as follows:

QUESTION NO. 1: Was the defendant, Carroll College, negligent?

ANSWER:  _____ Yes  _____ No

If you answered Question No. 1 "No", the Foreperson will date and sign the verdict.  You will notify the bailiff, who will return you to Court.  If you answered Question No. 1 "Yes", then answer Question No. 2.

QUESTION NO. 2: Was the negligence of Carroll College a cause in fact of the injuries and damages to the plaintiffs?

ANSWER:  _____ Yes  _____ No

If you answered Question No. 2 "No", the Foreperson will date and sign the verdict.  You will notify the bailiff, who will return you to Court.  If you answered Question No. 2 "Yes", then answer Question No. 3.

QUESTION NO. 3: Was the negligence of defendant Carroll College a proximate cause of the plaintiffs' injuries and damages?

ANSWER:  _____ Yes  _____ No

If you answered Question No. 3 "No", the Foreperson will date and sign the verdict.  You will notify the bailiff, who will return you to Court.  If you answered Question No. 3 "Yes", then answer both Question No. 4 and Question No. 5. [dealing with damage amounts].

The jury found that Carroll was not negligent and answered the first question "No."  As a result, it did not answer any further questions.

The parties agree that the issue during trial was whether Carroll breached its duty.  If it did, then that element of the

5

*prima facie case* of negligence would have been met and then, and only then, would the jury have had to move on to Questions 2 and 3 relating to causation. By checking "No" to Question No. 1, the jury found that Carroll had not breached its duty. Moreover, the parties agree that the issue on appeal is whether there was substantial evidence to support the jury's finding that Carroll did not breach its duty. Peschke states in her brief that "[w]e need not concern ourselves with the issues of cause in fact or proximate cause."

The pretrial order, to which the parties agreed, stated that:

> Defendant had the duty to provide reasonable security and a reasonably safe place to work, as well as to maintain its premises in a reasonably safe condition for individuals lawfully on its premises. This may include a duty to warn when reasonable and when the danger is reasonably foreseeable.

The District Court adopted the foregoing language verbatim into its Instruction No. 10 given to the jury.

Peschke argues on appeal that, given Father Courtney's duty to act as an ordinarily careful person under the circumstances, he should have arrested, disarmed, or removed Aills from the campus under the circumstances that existed at the time. She points to evidence that Aills was obviously intoxicated; had no business being on campus; was loud, boisterous, and disruptive; and was in possession of a handgun.

Peschke also argues that it was not only Father Courtney who was negligent. Peschke claims she presented evidence to show that there was a complete lack of security on the Carroll campus, which

6

may have led to the laxity of Father Courtney and other employees. She notes that at the time of the shooting incident, Carroll did not have a campus police or security department, but relied on the Helena Police Department to provide security. Peschke points out that there was no specific policy regarding intoxicated persons on campus and that it was a judgment call as to whether someone who was intoxicated should be removed from campus. Here, Peschke maintains no judgment was exercised.

Peschke also points out that others observed Aills prior to the shooting. Todd Little, a Carroll student and member of the grounds crew, Margaret Hoy, a student who was working at the desk in Borromeo Hall, and Joyce Schnablegger, a janitor who was doing cleaning work in the dormitory building prior to the shooting, all observed Aills on campus before the shooting. Peschke notes that, while none of these individuals saw a gun, they most likely would have reported Aills before he ever made his way inside the chapel had they been advised as to what procedure to follow with regard to a drunken transient on campus.

Peschke called Mark Warrington to testify as a security expert. Warrington was critical of Carroll for not posting the 911 emergency telephone number on all of its telephones and handbooks. He also criticized Carroll for its lack of radio communications, claiming that only one member of the Carroll crew had a radio.

Peschke is correct in asserting that she presented substantial evidence in support of her claim that Father Courtney, and therefore, Carroll, breached the duty to provide reasonable

security and a reasonably safe place to work, as well as to maintain its premises in a reasonably safe condition, which may have included the duty to warn when reasonable and when danger was foreseeable. However, Carroll presented evidence contrary to Peschke's. In this regard, the jury heard evidence that there had never before been a serious problem at Carroll caused by transients or homeless people visiting or passing through the campus. The jury also heard testimony that there had never before been a serious crime--defined as murder, rape, assault or armed robbery-- at Carroll.

Father Courtney testified that Terese mentioned Father Kirchen, another campus priest, which indicated that she was not a stranger to campus. Father Courtney stated that he did not observe Aills threaten anyone or be abusive to anyone. He did see Aills with a handgun, but testified that he was not brandishing the gun or waving it around in any fashion. Father Courtney testified that Aills did not resist when he ushered Aills out of the chapel.

Little testified that he had seen Aills and Terese near campus two different times prior to the shooting and that he was never close enough to Aills to determine whether Aills was intoxicated or not. Hoy stated that Aills and Terese looked like they had been on campus before and knew where they were going. She stated that, although she talked to Terese, she never talked to Aills and was not ever close enough to Aills to determine if he was intoxicated. Schnablegger stated that she was never afraid, nor felt threatened by the couple at any time.

8

Carroll's cross-examination of Warrington produced testimony that Warrington had not reviewed crime statistics for Carroll or for the city of Helena and/or Lewis and Clark County. He had never been to the Carroll campus or to the City of Helena prior to the evening before his testimony. Furthermore, there was testimony that, although the 911 number was capable of being used, it was still in the testing process and was not published for use at the time. Testimony also revealed that all of the desk clerks had radios and could communicate with one another and the "night man."

In this case, the jury was presented with conflicting evidence regarding whether Carroll breached its duty. It determined that no breach had occurred. It is within the province of the jury to determine the weight to be given to evidence presented and to judge the credibility of witnesses, and in reviewing the jury's verdict, we must view the evidence in the light most favorable to the prevailing party. See Hogan v. Flathead Health Center, Inc. (1992), 255 Mont. 388, 842 P.2d 335; Silvis Through Silvis v. Hobbs (1992), 251 Mont. 407, 824 P.2d 1013. We conclude that when the evidence in this case is viewed in the light most favorable to Carroll, the jury's verdict is supported by substantial credible evidence.

ISSUE 2

Did the District Court properly instruct the jury?

We have previously stated that the district court has discretion when it decides how to instruct the jury, taking into consideration the parties' theories, and that we will not overturn

the court's decision absent an abuse of discretion. Cechovic v. Hardin & Associates, Inc. (1995), 273 Mont. 104, 116, 902 P.2d 520, 527 (citing Arnold v. Boise Cascade Corp. (1993), 259 Mont. 259, 267, 856 P.2d 217, 222). When we examine whether jury instructions were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. Cechovic, 902 P.2d at 527.

Peschke argues that the District Court erred when it refused Peschke's proposed Instruction Nos. 12, 18, 18A, 19, and 20. Peschke also argues that the court erred when it gave its Instruction No. 12 over Peschke's objection. We address her arguments in turn.

Peschke's proposed Instruction No. 12 read as follows:

You are instructed that defendant was negligent as a matter of law. The plaintiffs have the burden of proving:

1. That the plaintiff Emma Peschke was injured.

2. That defendant Carroll College's negligence was both the cause in fact and the proximate cause of the injury to Emma Peschke.

3. The amount of money that will compensate Emma Peschke for her injury.

Peschke requested this instruction based on her contention that Carroll had breached its duty and was therefore negligent as a matter of law. However, this **matter is** resolved by our decision in Issue 1 that substantial credible evidence supports the jury's verdict that Carroll was not negligent, that is, that Carroll did

10

not breach its duty to provide reasonable security and a reasonably safe place to work, as well as to maintain its premises in a reasonably safe condition, which may have included the duty to warn when reasonable and when danger was foreseeable.

Peschke's proposed Instruction No. 12 would have essentially directed a verdict for her on the negligence issue. A directed verdict is proper only in the complete absence of any evidence to warrant submission to the jury. Head v. Central Reserve Life of North America (1993), 256 Mont. 188, 199, 845 P.2d 735, 742. See also Rule 50(a), M.R.Civ.P. Here, in light of our holding in Issue 1 that there was substantial evidence to support the jury's verdict that Carroll was not negligent, there was certainly not a complete absence of any evidence to submit to the jury, and a directed verdict was therefore not proper. We conclude that the District Court did not abuse its discretion in refusing Peschke's proposed Instruction No. 12.

Instruction No. 12 given by the District Court, to which Peschke objected, is a verbatim recitation of Montana Pattern Instruction 2.04 and reads as follows:

> Every person has a right to assume that every other person will act with reasonable care. In the absence of a reason to think otherwise, it is not negligent for a person to fail to anticipate an injury which can only result from another's violation of the law or failure to use reasonable care.

Peschke argues that this instruction, while not an inaccurate statement of the law, is incomplete with regard to anticipation of criminal conduct on Carroll's premises. Peschke maintains that the

11

jury should have been instructed that Carroll had a duty to take precaution to protect persons lawfully on campus from criminal conduct. She notes that this is not a case of a customer walking into a fast food restaurant and suddenly firing into a crowd. Here, according to Peschke, Carroll, through its agents, had contact and conversation with Aills, and noticed that he was in possession of a firearm and was intoxicated.

Peschke's argument falls short of the mark in that it fails to take into account the key language of Instruction No. 12 that states "[i]n the absence of a reason to think otherwise." The instruction does not, as Peschke contends, instruct that it is <u>not</u> negligent <u>not</u> to anticipate Aills' criminal conduct. It specifically poses the question of whether the circumstances created a reason to think otherwise. Peschke argues that there was a reason to think otherwise, and Carroll argues that there was not. This was precisely the issue that was before the jury. The jury found in Carroll's favor, and we have held in Issue 1 that there was substantial evidence to support the jury's verdict.

Moreover, we examine jury instructions in their entirety. <u>Cechovic,</u> 902 P.2d at 527. The court's Instruction No. 10 read as follows:

> Defendant had the duty to provide reasonable security and a reasonably safe place to work, as well as to maintain its premises in a reasonably safe condition for individuals lawfully on its premises. This may include a duty to warn when reasonable and when the danger is reasonably foreseeable.

12

This instruction correctly sets forth the law applicable to this case. When read together with the court's Instruction No. 12, it fully and fairly instructed the jury on Peschke's theory of the case. The law requires nothing more. See Cechovic, 902 P.2d at 527-28. We therefore conclude that the District Court did not abuse its discretion when it gave its Instruction No. 12 over Peschke's objection.

Peschke's proposed Instruction Nos. 18, 18A and 19 all come from the Restatement (Second) of Torts. Peschke's proposed Instruction Nos. 18 and 18A, respectively, read as follows:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

> A failure to act may be negligent in situations in which the actor fails to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special relationship toward the one who suffers the harm, which includes the duty to protect him against intentional misconduct.

Section 302B of the Restatement (Second) of Torts is Peschke's authority for these two instructions. In addition, Peschke cites to § 344 of the Restatement (Second) of Torts as authority for her proposed Instruction No. 19, which reads as follows:

> The defendant is subject to liability to other persons while they are upon defendant's property, for physical harm caused by the intentional harmful acts of third persons and by the failure of the defendant to exercise reasonable care to:

> (a) discover that such acts are being done or are likely to be done, or

13

(b) give a warning adequate to enable those other persons to avoid the harm, or otherwise to protect them against it.

This Court has not adopted these "Restatement" instructions before, and we need not address whether to do so here, based on our discussion above that the District Court correctly instructed the jury taking into account the parties' theories of the case.

Finally, we address Peschke's proposed Instruction No. 20, which read as follows:

The defendant has the duty to exercise ordinary care to keep his premises safe for all persons who foreseeably might come upon them, and to warn such persons of any hidden or lurking danger upon such premises.

In refusing this instruction, the District Court indicated the instruction applied to a situation where a hazard existed on the property, such as an open ditch or damaged sidewalk, and not to a situation like the present case where any perceived risk came from the intentional or criminal actions of individuals on the premises. See Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 718 P.2d 1341; Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 706 P.2d 491; Corrigan v. W.P. Janney (1981), 192 Mont. 99, 626 P.2d 838. We determine that the court did not abuse its discretion in this regard

We have considered in their entirety the jury instructions both given and rejected by the court in this case. We determine that, when read together, the instructions that were given correctly set forth the law and take into account the parties'

14

theories of the case. We therefore conclude that the District Court properly instructed the jury.

ISSUE 3

Did the District Court err by allowing the jury to view a videotaped reenactment of the events which occurred prior to the shooting incident?

Carroll presented a videotaped reenactment to the jury depicting Father Courtney arriving at the chapel, preparing the altar for Mass, in the sacristy preparing for Mass, back at the altar saying Mass, and then going to his apartment upstairs in Borromeo Hall to call the police. Of course, that portion of the tape showing Father Courtney going to his room to call the police did not actually occur, but it was shown to indicate what would have had to occur had he made the decision to call the police. Peschke relies on Rule 403, M.R.Evid., to argue that admission of the videotape was highly prejudicial and misleading for the jury.

Rulings on the admissibility of evidence are within the discretion of the district court and will not be reversed by this Court absent an abuse of discretion. Hansen, 835 P.2d at 753 (citing Cooper v. Rosston (1988), 232 Mont. 186, 190, 756 P.2d 1125, 1127). Here, we conclude that the District Court abused its discretion when it allowed the videotape into evidence. The contents of the tape allowed the jury to see only Father Courtney's actions, without any portrayal of Aills' behavior, compellingly showing the jury a quiet, uninterrupted, and one-sided version of what transpired.

15

However, we have stated that in order for error to be the basis for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party. Hansen, 835 P.2d at 753. See also Rule 61, M.R.Civ.P. Here, we determine that even though the District Court erred in admitting the videotape, Peschke's substantial rights were not materially affected. Carroll offered the videotape to show that even if Father Courtney had called the police when he ushered Aills from the chapel, the police could not have responded to the scene in time to prevent the shooting from occurring. Such timing evidence goes to the issue of causation, which the jury did not reach, having determined that Carroll had not breached its duty to warn and was therefore not negligent. Thus, we conclude that the court's error in this regard was harmless.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

16

_____
District Court Judge **James E. Purcell**
sitting for Chief Justice J. A. Turnage

_____
District Court Judge Marc G. Buyske
sitting for Justice James C. Nelson

17

Justice W. William Leaphart, concurring in part and dissenting in part.

As to issue number one, I agree that there was substantial evidence to support the verdict under the instructions which were given. I concur with the resolution of issue number three. I dissent on issue number two, specifically with regard to the Court's failure to give plaintiffs' proposed instruction no. 18 and the giving of court's instruction no. 12 over plaintiffs' objection.

Peschkes' primary theory of negligence in this case was that Carroll College could be found negligent based upon the criminal act of the third person assailant. Peschkes were entitled to a jury instruction which set forth their theory of the case; i.e., negligence predicated upon the criminal act of a third person. Peschkes' proposed instruction no. 18 read as follows:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

This instruction would have specifically advised the jury that, under the right circumstances, a defendant can be found negligent based upon the criminal conduct of a third person. Such an instruction is consistent with our decision in Estate of Strever v. Cline (Mont. 1996), 924 P.2d 666, 53 St.Rep. 576, and with § 302B of the Restatement (Second) of Torts. However, the court refused this instruction and did not give any instructions specifically addressing the question of negligence arising out of the criminal

conduct of third persons. The majority holds that court's instruction no. 12 was adequate. Court's instruction no. 12 reads as follows:

> Every person has a right to assume that every other person will act with reasonable care. In the absence of a reason to think otherwise, it is not negligent for a person to fail to anticipate an injury which can only result from another's violation of the law or failure to use reasonable care.

The Court suggests that the "in the absence of a reason to think otherwise" language in instruction no. 12 left the door open to Peschkes to argue that Carroll College had a reason to think otherwise and, therefore, was negligent. The Court's reading of instruction no. 12 is too broad. The average juror would not, based upon the "reason to think otherwise" language in the instruction, assume that liability can be premised upon the criminal acts of third persons. To the contrary, a person not schooled in the law would assume that one person cannot be held civilly liable for the criminal acts of another person.

Until very recently, there has been considerable confusion in the decisions of this Court as to whether there can be recovery for an injury which results from an intervening criminal act of a third person. It was only in June of 1996 when this area of the law was clarified in Estate of Strever, 924 P.2d 666, in which we overruled three prior decisions disallowing recovery based upon intervening criminal acts and adopted the rationale from another contrary line of Montana authority involving intervening criminal acts and held that:

> If, under the facts of a given case, an intervening

criminal act is one which the defendant might reasonably foresee, then there is no reason why the fact finder should not decide causation the same as with any other intervening causation case.

Estate of Strever, 924 P.2d at 674. Given the confusion at the judicial level, it is pure folly to assume that, in the absence of a specific instruction, a juror would intuitively understand that a defendant can be found negligent for failing to anticipate the criminal act of a third person. The facts of this case clearly required such an instruction and yet, despite plaintiffs' requests, there were no instructions given which advised the jury that negligence could be premised upon the criminal acts of a third person.

In Chambers through Chambers v. Pierson (1994), 266 Mont. 436, 441, 880 P.2d 1350, 1353, there was a factual dispute as to whether the plaintiff bicyclist was in plain view when he was hit by the defendant's truck. The trial court failed to instruct the jury on plaintiff's theory that he was in plain view and that defendant had the duty to see and is presumed to have seen what was plainly visible. In holding that this constituted reversible error, we stated:

> It is well established in Montana that a trial court commits reversible error by refusing to instruct the jury on an important part of a party's theory in the case. [Citation omitted.]
> While other instructions properly addressed the elements necessary to establish negligence, none of the instructions addressed the plain view presumption, an essential part of plaintiff's case on which the plaintiff was entitled to have an instruction submitted to the jury. We conclude, therefore, that it was reversible error in this case to refuse to give plaintiff's Proposed Instruction No. 26 because it instructed the jury on the applicable law for plaintiff's theory of the case.

20

<u>Chambers,</u> 880 P.2d at 1353-54.

In the present case, liability for the criminal acts of a third person is the very heart of plaintiffs' case. Yet, there was not one instruction given which references this theory of the case. It escapes me how this esoteric theory is somehow implicit in the very general negligence instructions which were given.

For the above reasons, the plaintiffs were denied a fair trial and I would reverse and remand for a new trial.

                                         _____
                                              Justice

Justice William E. Hunt, Sr., joins in the foregoing concurring and dissenting opinion.

                                       _____
                                              Justice