JUSTICE WARNER
dissents.
¶54 I dissent. The Court determines that the concept of duty in Montana negligence law is effectively as broad as the Butterfly Effect, which the Court does not understand.[1] The Court abandons the legal concept of foreseeability to reach its conclusion that a duty is owed to anyone who is at an accident scene because all persons present are within an undefined zone of risk. Also, the Court so severely limits what constitutes an independent intervening cause that a legal determination of what constitutes an intervening cause is all but eliminated.
¶55 Swift is entitled to summary judgment that as a matter of law it owed no duty to Fisher. Of course, the Court is correct that without duty, and a breach of that duty, no negligence can exist. ¶ 13. Also, it has long been the law in Montana that whether a legal duty exists is a question of law to be determined by the court, and the concept of duty includes the necessity that the defendant could reasonably have *348 foreseen his conduct could have resulted in an injury to the plaintiff. ¶ 17.
¶56 The District Court held, and this Court agrees, “there is no question that when a person drives in a negligent manner, a reasonably prudent person could foresee that a law enforcement officer attending a resulting accident could be injured by oncoming traffic.” Thus, the Court concludes Swift’s driver could foresee Fisher’s injury and duty is established. The Court correctly states the law. But neither the District Court nor this Court applied the law to the facts. Fisher was not injured by oncoming traffic. He was injured by J & D’s careless handling of Swift’s trailer, which had come to rest and had passed out of the control of Swift’s driver at least an hour before Fisher was injured.
¶57 A correct analysis of whether Swift owed Fisher a duty starts with the well-established law that foreseeability is of “primary importance in establishing the existence of a duty.” Prindel, ¶ 39. If a reasonably prudent defendant cannot reasonably foresee danger of direct injury nor risk from an intervening cause, he is not negligent. Prindel, ¶ 39; Busta, 276 Mont. at 362, 916 P.2d at 134 (quoting Mang, 153 Mont. at 437, 458 P.2d at 781). The specific accident that ensues, however, need not be foreseen. Prindel, ¶ 39; Ekwortzel v. Parker, 156 Mont. 477, 483, 482 P.2d 559, 562-63 (1971).
¶58 In deciding whether Swift’s driver could reasonably foresee the injury that occurred to Fisher, it is necessary to cut through the hyperbole of counsel and examine the facts as they are presented in the record.
¶59 The record presented to the Court does not show the extent of the storm on 1-15 the day of the accident. It is not known just where on I-15 the conditions became so bad that a reasonable man would have pulled to the side of the road and stopped. In the opinion of the sheriffs deputy and the highway patrolmen on the scene, at the point where the accident happened a reasonable driver would have pulled over because the snow was blowing to the extent that visibility was occasionally near zero. The officers did not say it was necessary to stop because the surface of the road was too slick to continue.
¶60 Fisher was summoned to investigate an accident where a tractor semi-trailer rig had sideswiped two cars that had stopped on the shoulder of the road to wait out the storm. When he arrived, he parked behind the patrol car of a Lewis & Clark County deputy sheriff who was on the scene directing traffic. He parked his patrol car so that it straddled the fog line on the right-hand side of the road in the southbound lanes. He was sure of this because he could see the fog line *349 on the highway. Another car stopped behind Fisher’s patrol car. A short time later Swift’s driver, Shultz, came along at a slow speed and sideswiped both Fisher’s patrol car and the car behind it, stopping alongside and in contact with the patrol car. Fisher broke off his investigation of the prior accident, told Shultz to go back to his truck, and then reported the accident involving his patrol car. He then resumed his investigation of the first accident. He talked to people involved in the first accident inside his patrol car while it was pinned beside the Swift trailer.
¶61 About an hour to an hour and ten minutes later the J & D wrecker arrived, along with two workmen. One of the J & D workmen told Fisher that the plan was to attach a cable to the rear axels of the semitrailer and pull it away from his patrol car and the other car. Fisher was then to back his patrol car out of the way. The trailer was moved about five feet in this fashion. After the trailer was moved, Fisher got out of his patrol car and went between it and the trailer. He and one of the J & D workmen viewed the damage to the patrol car, which was not too severe. The roadway was described as not slick like ice, but slick like heavy snow. Fisher heard someone say, “Look out,” turned, and saw the trailer coming toward him. No one saw the trailer sliding. It may have been pushed by the wind. But, all agree that it moved only when the other J & D workman unhooked it from the wrecker. Fisher was unable to get out of the way, and he was pinned between the trailer and his patrol car causing his injuries.
¶62 As we are concerned with a summary judgment motion, it is proper to assume that Swift’s driver was negligent in not stopping when he could not see the road ahead of him, and thus he sideswiped Fisher’s highway patrol car and the other car.[2] After that accident Swift’s negligence came to a halt. The scene was quiet for over an hour. Fisher had not been injured.
¶63 Swift’s trailer had to be moved. It mattered not whether it was in the way because of carelessness or if it had simply broken down-it had to be moved. Swift and its driver had nothing to do with moving the trailer. J & D successfully moved the trailer. The move was completed, and Fisher and his car were free to go. Fisher had not been injured.
¶64 When Fisher decided to go between the trailer and his patrol car, *350 the trailer was secured by a cable attached to the wrecker. Fisher, at that point, was merely surveying the damage which had been caused by an accident that had happened over an hour before, in which he had not been injured. And, he was not acting in an official capacity. The damage to his patrol car was being investigated by his colleague. It was the action of J & D’s workman in unhooking the wrecker cable from the trailer which allowed it to roll back into Fisher and the two cars, causing Fisher’s injuries.[3]
¶65 The question of whether Swift owed a duty to Fisher is answered by an analysis of whether its driver, Shultz, was reasonably required to foresee that if he continued in the storm he might come upon other cars and trucks that were stopped on the road because they had been in an accident; that he might hit two of the stopped cars; that a person already at the scene of the accident he was in, but who was not injured in such accident, could well be standing in the road looking at the damage an hour later; and that, while doing so, that person would be injured when an operator of the wrecker clearing the roadway was negligent.
¶66 The chief element of whether a defendant has a duty to a plaintiff is the foreseeability of the risk the defendant takes. And, because duty is inextricably intertwined with foreseeability, whether a particular defendant owes a particular plaintiff a duty must be decided only on a case-by-case basis. Mang, 153 Mont. at 437, 458 P.2d at 781. In this case the Court incompletely analyzes the concept of foreseeability, does not take into consideration the facts of how Fisher’s injuries came about, and, therefore, reaches the wrong conclusion.
¶67 The Court cites only a part of the analysis in Hinkle to establish that the sole question a court asks is whether a defendant could have foreseen that his or her conduct could result in an injury to the plaintiff. ¶ 21 (citing Hinkle, ¶ 30). The Court then completes its destruction of foreseeability in Montana tort law by ignoring the facts of the case and then taking out of context the statement in Prindel that the foreseeability question presented was merely whether the plaintiff was within a foreseeable zone of risk. ¶ 21 (citing Prindel, ¶ 38).
¶68 The Court’s analysis of foreseeability in Hinkle was not so shallow as in this case. The Court in Hinkle, quoting with approval Lopez v. Great Falls Pre-Release Services, Inc., 1999 MT 199, ¶ 28, 295 Mont. 416, ¶ 28, 986 P.2d 1081, ¶ 28, stated:
*351 “Put simply, in analyzing foreseeability in the duty context, we look to whether or not the injured party was within the scope of risk created by the alleged negligence of the tortfeasor-that is, was the injured party a foreseeable plaintiff?”
Hinkle, ¶ 30. In this case, the scope of the risk created by the alleged negligence of Swift’s driver is what must be analyzed in the context of the facts of how Fisher came to be injured.
¶69 Likewise, Prindel most definitely does not stand for the proposition that anyone who happens to be in the area of an accident is a foreseeable plaintiff, as the Court states in ¶ 23. Prindel concerned a man carelessly released from jail by the defendant Ravalli County. The man was dangerous and he assaulted Prindel. The Court held in Prindel that the county owed a duty of reasonable care, not to anyone whom the man might have harmed, but only to those persons within the area the defendant county could reasonably have foreseen might be harmed. Prindel, ¶ 39 (citingLopez, ¶ 31). Prindel was assaulted by the man Ravalli County carelessly released within ten blocks of the jail. Thus, the Court held that he was a foreseeable plaintiff under the circumstances. Prindel, ¶ 42.
¶70 The Court’s conclusion that anyone who happens to be at a place where an accident occurs is a foreseeable plaintiff constitutes a complete distortion of Montana law. What the Court has done is change the concept of duty from an analysis of what a person can reasonably foresee to be a result of his actions and expanded it to include potentially infinite liability for anything a person can imagine might possibly be the result of his actions. When applied correctly, foreseeability in the law is more limited than imagination in assessing a risk. The law limits duty to that which a reasonable person would foresee as likely to happen as a result of his actions.
“In striking this balance-that is, in weighing the likelihood of harm, the seriousness of injury and the value of the interest to be sacrificed-the law judges the actor’s conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonable prudent person would then have foreseen as likely to happen, is the key to the question of reasonableness * *
The element emphasized above-what the reasonably prudent person would then have foreseen as likely to /iqppera-constitutes a limitation on the otherwise potentially infinite liability which would follow every alleged negligent act, and the law of torts *352 holds a defendant amenable only for injuries to others which, to defendant at the time, were reasonably foreseeable.
Mang, 153 Mont. at 436-37, 458 P.2d at 781 (emphasis in original) (quoting in part Fowler V. Harper & Fleming James, Jr., The Law of Torts vol. 2, 929 (Little, Brown & Co. 1956)).
¶71 When the law is correctly applied to the facts presented by this case, it becomes obvious that Swift’s driver could not reasonably foresee the injury to Fisher when he proceeded into the snowstorm on Sieben Flats. As he could not see where he was on the highway, he could reasonably foresee it was likely he would hit another car. As he could not see, he could reasonably foresee that other motorists could not either, and the road might be partially blocked by vehicles that had been in a previous accident. He might reasonably foresee that a highway patrolman would be investigating a previous accident. If so, the patrolman would be on the road, and if this were the case, he would likely run into him or her causing injury. At the very edge of foreseeability, Swift’s driver might foresee that if he did cause an accident, it was likely that a highway patrolman would investigate that accident, and another motorist might come along and negligently injure the patrolman. However, a reasonably prudent person could not foresee that the risk he took by proceeding into the storm made it likely that over an hour after he caused a non-injury accident, a highway patrolman not investigating the accident would be injured not by another motorist who could not see where he was going, but by the negligence of a wrecker crew in unhooking a cable from his trailer after they had moved it. As the Court notes in ¶ 21 and as stated in Palsgraf, a defendant owes a duty only with respect to those hazards whose likelihood made the conduct unreasonably dangerous. Shultz’s conduct did not make it likely that J & D would injure Fisher.
¶72 The injury to Fisher was not a foreseeable consequence of Swift’s driver proceeding into the snowstorm when he could not see. Therefore, Swift owed no duty to Fisher, and the judgment of the District Court dismissing the action against Swift was correct.
¶73 As the injuries to Fisher were not foreseeable by Swift’s driver, Swift owed him no duty and is entitled to summary judgment. However, if Swift owed a duty to Fisher, which it did not, I would nevertheless conclude that the negligent action of J & D’s workman in unhooking the cable from Swift’s trailer was an independent intervening cause of Fisher’s injuries as a matter of law.
¶74 As the Court stated in Prindel, when a case presents the issue of an intervening act of a third party, foreseeability is also addressed in the context of proximate cause. Prindel, ¶ 44. To the extent that the *353 specific injury to the plaintiff must be foreseeable, the issue of intervening acts normally involves questions of fact which should be left to a jury. Prindel, ¶ 45. However, when reasonable minds can reach but one conclusion the question of foreseeability is determined as a matter of law. Prindel, ¶ 45.
¶75 In ¶¶ 46-47, the Court misapprehends the facts of how Swift’s driver came to be in an accident. He did not lose control of his tractor semi-trailer on the ice. He did not lose traction, and he maintained control of his truck. He was driving when he could not see because of the blowing snow. He sideswiped Fisher’s patrol car and the car behind it, which were partially in the far right driving lane, because he did not see them. Nevertheless, I do not disagree with the Court’s proposed instruction concerning independent intervening cause set forth at ¶ 49. However, this instruction alone does not adequately address the element of foreseeability as it relates to causation that this Court emphasized in Busta and its progeny. The conduct of Swift’s driver is a cause of Fisher’s injury only if, in a natural and continuous sequence, it was a foreseeable and substantial factor in bringing it about. The Restatement (Second) of Torts identifies three factors the fact-finder should pay close attention to when determining whether the defendant’s conduct was a substantial factor in intervening cause cases:
(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor’s conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and] (c) lapse of time.
Restatement (Second) of Torts § 433 (1965). An analysis of this case in conformity with these well-accepted principles leads to only one conclusion-J & D’s negligence is the cause of Fisher’s injuries.
¶76 This case necessarily requires a consideration of whether Shultz’s conduct created a force which was in continuous and active operation up to the time Fisher was injured. It did not. In addition, it must be considered whether Shultz’s conduct created a situation that harmed Fisher before there was a lapse of time between his conduct and the injury. It did not. It must also be considered whether the situation created by Shultz was acted upon by J & D’s workman, for whom neither he nor Swift was responsible. It cannot be denied that Fisher would not have been injured if not for the actions of the wrecker crew.
*354 ¶77 Shultz was in an accident that did not harm Fisher. Over an hour later J & D’s wrecker arrived. The situation created by the accident did not create a situation that would have harmed Fisher unless it was acted upon by the negligent conduct of J & D. Reasonable minds could not differ in finding that the negligence of J & D is an independent intervening cause of Fisher’s injury.
¶78 Considering the well-accepted and applicable law concerning independent intervening cause, as promulgated by the Restatement (Second) of Torts, which is appropriately called to a jury’s attention by the trial court and argued by counsel, reasonable minds could not differ. J & D’s negligence in releasing the trailer to roll back into Fisher was the independent intervening cause of Fisher’s injuries. This conclusion is further bolstered by the law providing that under these circumstances Swift could reasonably request an instruction that one is not required to anticipate an injury that can only result from another’s negligence. See Peschke v. Carroll College, 280 Mont. 331, 340, 929 P.2d 874, 879 (1996). Swift is entitled to summary judgment that Fisher’s injury was the result of an independent intervening cause.
¶79 I dissent from the Court’s untoward expansion of the concept of foreseeability as it relates to duty to the effect that anyone injured near an accident, no matter how, is a foreseeable plaintiff. I also dissent from the Court’s conclusion that reasonable minds could differ on whether J & D’s negligence was an independent intervening cause of Fisher’s injury. They could not.
CHIEF JUSTICE GRAY and JUSTICE RICE join in the foregoing dissent.

 The Butterfly Effect is the idea that a butterfly stirring the air today in Beijing can transform storm systems next month in New York. James Gleick, Chaos 8 (Penguin Books 1987). Flapping butterfly wings in China represents a small change in initial conditions. These small actions cause a chain of events leading to large-scale phenomena. Had the butterfly not flapped its wings, the storm may not have occurred; the first accident may not have happened; Fisher may not have come to investigate it; Swift’s driver might not have hit Fisher’s patrol car; J & D might not have had to move Swift’s truck; J & D’s workman might not have carelessly unhooked the trailer; and Fisher would not have been injured by that workman’s negligence. Thus, the butterfly in China is legally required to foresee that flapping its wings would likely result in an accident on Sieben Flats in Montana. Considering the Butterfly Effect, and the Court’s analysis, everything imaginable is foreseeable.

 Of course, the driver of the tractor semi-trailer unit that sideswiped the original two cars was also negligent. Under the Court’s analysis of both duty and independent intervening cause, the driver of the first rig:, who caused Fisher to come to the scene, would be subject to suit claiming contribution. Who knows when, if ever, the chaos created by the Court’s foreseeability analysis ends?

 All parties agree that J & D was negligent.